**UNITED STATES of America**

**v.**

**Claude Lamott WILFORD, Jr.,**
**Appellant.**

**No. 73–1637.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 30, 1973.

Decided March 11, 1974.

Richard E. Poole, Potter, Anderson & Corroon, Wilmington, Del., for appellant.

Bruce L. Thall, Asst. U. S. Atty., Wilmington, Del., for appellee.

Before ADAMS and ROSENN, Circuit Judges, and SHERIDAN, District Judge.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal raises questions concerning the guidelines formulated by this court in United States v. Barber, 442 F.

2d 517 (3d Cir. 1971), for jury instructions on identification. Appellant, Claude Lamott Wilford, Jr., was tried to a jury and convicted of one count of unlawful distribution of heroin in violation of 21 U.S.C. § 841(a)(1). He was sentenced to a term of eight years plus a special parole term of three years. On appeal, he contends that the failure of the trial judge to specifically instruct the jury on eyewitness identification constitutes reversible error. We affirm.

On the afternoon of December 18, 1972, Agents Britt and Malloy of the Federal Bureau of Narcotics and Dangerous Drugs and James Vaughn, a paid Government informer, met and formulated plans to purchase narcotics from an individual known to Vaughn as "Lamott" living at 2606 Bowers Street, Wilmington, Delaware. About 5:15 that afternoon, after searching Vaughn to assure that he had no narcotics or money on his person, the agents provided Vaughn with $40 and drove him to a housing project located near the intersection of 24th and Bowers Streets. The two agents remained in the car and observed Vaughn as he walked to 2606 Bowers Street, knocked on the front door, and talked to a man at the doorway. The agents then observed Vaughn leave the residence and return to the car where he turned over four glassine packages containing white powder. Field testing and chemical analysis showed that the substance was heroin. Wilford was arrested on January 4, 1973, and tried on May 4.

On direct examination Vaughn testified that on two or three prior occasions he had purchased narcotics from Wilford. He positively identified Wilford in court as the person from whom he purchased narcotics on December 18. Vaughn further testified that he purchased the narcotics as he and Wilford stood in the open doorway of the Bowers Street residence, after Wilford came downstairs in response to his knock.

During the transaction, Agents Britt and Malloy remained in the parked car, approximately 150–200 feet from the

**732**

Bowers Street residence. Although both testified that they observed two men at the doorway and could identify one as Vaughn, neither was able to positively identify the individual with whom Vaughn was talking.[1] Malloy, however, testified that just prior to his observations of the two men at the doorway he saw a Negro male leaning out of a second floor window of the residence. Malloy definitely identified the individual as Wilford[2] and he adhered to this positive identification on cross-examination.[3]

Wilford took the stand in defense. He admitted that he, together with his mother, two brothers and a sister, lived at 2606 Bowers Street. He denied, however, ever having met or seen James Vaughn prior to his arrest on January 4. In addition, he denied that he sold Vaughn anything on December 18 or at any time. Although he did not deny that he could have been at his residence on December 18, he testified that he could not recall where he was at that time. Concerning Malloy's positive identification at the second story window, Wilford asserted that screens on the window prevented him from looking out and that even had he leaned out, poor lighting at the housing project would have made identification impossible.

Relying on our recent decision in United States v. Barber, Wilford's sole assignment of error is the trial court's failure to *sua sponte* instruct the jury that identification testimony should be "received with caution and scrutinized with care."[4] He maintains that the evidence introduced on that issue, the testimony of Vaughn and Malloy, failed to

1. Britt stated that he "couldn't positively identify the individual on the steps." Malloy's testimony as to the episode on the steps was somewhat more equivocal. Malloy testified on direct examination:

Q. . . . [w]hy don't you state in your own words what you saw at the door of 2606 Bowers?

A. Well, as I said, the next time we saw Mr. Vaughn or anybody else was maybe thirty seconds later at the door of 2606. It was Mr. Vaughn and a Negro man, who had the physical appearances of Mr. Wilford.

I couldn't see his face clearly so I cannot be absolutely sure if it was him. It appeared to be to me, but it was too dark at the doorway to get a clear look at his face.

On cross-examination Malloy testified:

A. . . . Down at the doorway I couldn't see his face. All I saw was the physical shape, I guess you would say. There wasn't enough light in the doorway to be able to see his face.

Q. So that what you are saying is . . . the figure that was in the door you cannot identify.

A. Right. The figure in the door I cannot definitely say was Mr. Wilford.

2. Q. You stated that when Mr. Vaughn first rang the bell you saw a face, I believe, at the second—

A. Yes. An individual leaned out of the second story window at the 2606 address. It was a Negro male that leaned out of the window.

Q. Do you see in the courtroom today the individual who leaned out of the window?

A. Yes sir. It is the defendant, Claude Lamott Wilford.

Q. Is there any question in your mind about the identity of this individual?

A. No. That is the individual that was at the window.

3. Q. [Defense Counsel]: Now, how much of a figure did you see in the window?

A. Leaning out the window, from about the chest level up.

Q. And you are absolutely sure that that person was Mr. Wilford.

A. Yes sir. It was Mr. Wilford. I could see his face. There are street lights up and down both streets and there are, what I would call, lights in through this walkway. I don't know exactly where they are, but it is lighted so that when the window was open and he was leaning out, there was light from both behind him and you could see the windows.

4. Wilford cites the following language from *Barber*:

In any case raising the question whether the defendant was in fact the criminal actor, the jury will be instructed to resolve any conflict or uncertainty on the issue of identification. The jury will be instructed that identification may be made through the perception of any of the witness' senses, and that it is not essential that the witness himself be free from doubt as to the correctness of his opinion. The identification testimony may be treated by the

meet the four criteria outlined in *Barber*. Under such circumstances, he contends that under *Barber*, the trial court was compelled, on its own motion and absent a request, to give an appropriate cautionary instruction.

In *Barber* we dealt with a special set of facts. Seven defendants were charged in four counts of an indictment with assaulting FBI agents, conspiring to commit such assaults, and assisting a federal prisoner to escape from custody. Fifteen men had approached the two FBI agents, Snyder and Grant, and three to four persons had assaulted each agent. Thus, the confusion surrounding the short-lived episode could easily result in misidentification. Many of the eyewitnesses were unclear as to what had occurred and were often self-contradictory. As Judge Aldisert noted:

> An affray of such short duration, involving so many participants, affords but limited opportunities for witnesses to observe and to make positive identifications.

442 F.2d 525. Our concern in *Barber* was with the crucial problem of mistaken identification—a problem which is frequently presented when the prosecution relies on eyewitness testimony to establish the identity of the defendant.[5] We noted the often "skeletal" instructions given on this question and sought to insure that where appropriate, cautionary instructions should focus the jury's attention to the possibility of mistaken identification with sufficient particularity. To achieve this goal, we took occasion, under our supervisory power, to provide trial courts with guidelines that were "require[d]" to be satisfied when cautionary instructions were given.

We first address the contention that *Barber* requires a cautionary jury charge even absent a request from counsel.[6] We do not read *Barber* to require this result. *Barber* involved a case where a specific charge was requested. In that context we stated that instructions with sufficient particularity were required.[7] We did not direct, as Wilford here contends, that in every case, even absent a request, such instructions are required.[8] Our inquiry, therefore, is limited to the question of whether the trial court's failure to *sua*

jury as a statement of fact by the witness: (1) if the witness had the opportunity to observe the accused; (2) if the witness is positive in his identification; (3) if the witness' identification testimony is not weakened by prior failure to identify or by prior inconsistent identification; and (4) if, after cross-examination, his testimony remains positive and unqualified. In the absence of any one of these conditions, however, the jury will be admonished by the court that the witness' testimony as to identity must be received with caution and scrutinized with care. The burden of proof on the prosecution extends to every element of the crime charged, including the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime for which he stands charged. 442 F.2d at 528.

5. The appellant urged in United States v. Barber "that the entangled circumstances of this case compelled a more exacting charge to underscore the critical nature of the identification issue—the commingling of participants and passersby in the vortex of a sudden mob scene rendered arduous and crucial

the task of determining who did what to whom." 442 F.2d at 525.

6. An examination of the trial record does not reveal, nor does Wilford's counsel on appeal argue, that a request for such a cautionary instruction was made. We note that at the conclusion of his charge the trial judge asked counsel whether there was any objection to the charge as given. Wilford's counsel responded, "No, sir."

7. Because the trial court in *Barber* had relied on prior decisions holding that the trial court is under no obligation to grant a defendant's request for an instruction emphasizing the possibilities of mistake in identification, *see* United States v. Moss, 410 F.2d 386 (3d Cir. 1969), we held that the refusal to give the requested instruction did not require reversal in that case.

8. We did state in *Barber*, as Wilford points out,

> In any case raising the question whether the defendant was in fact the criminal actor, the jury will be instructed to resolve any conflict or uncertainty on the issue of identification.

*sponte* instruct the jury that the testimony concerning identification should be "received with caution and scrutinized with care" constitutes plain error. F.R. Crim. P. 52(b).

■■ In the case sub judice, the issue of good faith mistake in identification did not play such a central role[9] that the failure to give cautionary instructions requires reversal. The identification of Wilford by the Government's central witness Vaughn clearly met the four criteria outlined in *Barber*, and accordingly, required no cautionary instruction.[10] The thrust of Wilford's

---

442 F.2d at 528. However, this sentence does not require the construction that Wilford urges upon us. Implicit is the notion that the jury "will be instructed" only where the question is appropriately "raised" both by the testimony in the case *and* by a request from counsel. *See* United States v. McCarthy, 301 F.2d 796, 803 (3d Cir. 1962). To the same effect is our reference to "mandatory jury instructions" in United States ex rel. Reed v. Anderson, 461 F.2d 739 (3d Cir. 1972).

Similarly, in *Barber* we wrote:

Where identity is placed in issue, the trial court is required to charge the jury on this high degree of proof. United States v. Levi, 405 F.2d 380 (4 Cir. 1968); Jones v. United States, 124 U.S.App.D.C. 83, 361 F.2d 537 (1966); Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185, 190–191 (1966).

442 F.2d at 527 n. 16. However, neither that sentence nor the cases cited to support it appear to require an instruction absent a request. In both *Levi* and *Jones* the court indicated that if requested a special charge should be given. *Gregory*, which reversed on other grounds, did not decide this point.

The case of Macklin v. United States, 133 U.S.App.D.C. 139, 409 F.2d 174 (1969), cited by Wilford, was decided by the Court of Appeals for the District of Columbia under its supervisory power and was not cited by this court in *Barber*.

9. Wilford argues that "identification" was the sole issue in the case, chiefly because the only contested issue was his participation in the transaction. "Identification" in the sense in which Wilford uses it here refers to the broad aspect of "identification," that is, the identity of the criminal actor. This question is present in every case unless the defendant chooses to admit participation in the act and plead an affirmative defense. Although not as clearly as the charge given in United States v. Telfaire, 152 U.S.App.D.C. 146, 469 F.2d 552 (1972), the charge given here, read as a whole, sufficiently directed the jury's attention to the Government's burden of proving this broad aspect of "identification," that the defendant was the criminal actor, beyond a reasonable doubt. The court stated, for example:

> *The defendant here* has been charged in a one-count indictment with a crime of distributing heroin . . . .
>
> \* \* \* \* \*
>
> In order to meet the burden of proof under the indictment, the Government must prove beyond a reasonable doubt each of the following three essential elements: One, that *the defendant* distributed the substance; two, that the substance, in this case, was heroin; and three, that the distribution was done knowingly and intentionally.
>
> \* \* \* \* \*
>
> If the Government fails to prove all of the three essential elements of the charge, *then you must acquit the defendant* of the charge. [Emphasis supplied.]

Our reference in the text is to the somewhat narrower aspect of "identification," the possibility of good faith mistake in identifying an individual due to faulty perception or recollection. It was this narrower aspect of "identification," present in some, but not all cases where the Government must prove the identity of the defendant as the criminal actor, *see* United States v. Cary, 152 U.S. App.D.C. 321, 470 F.2d 469 (1972); Comm. v. Johnson, 433 Pa. 34, 248 A.2d 840, 842 (1969), which was the central concern of this court in *Barber*.

10. Both in his brief and at oral argument, Wilford's counsel argued that because Vaughn initially referred to Wilford as "Lamott" or "Lamott Williams" rather than Claude Lamott Wilford, his courtroom identification was unreliable. While this may indicate lack of close familiarity with Wilford, it does not indicate an inability to recall the physical identity of the individual from whom Vaughn allegedly purchased drugs on this and three prior occasions.

Wilford additionally argues that Vaughn's in-court identification required a cautionary instruction because Vaughn was shown three photographs after the alleged purchase. Vaughn did not testify on direct examination to the photographic identification. It came out in the cross-examination of Agent Malloy. Trial counsel neither requested discovery of the photographs nor objected to the pre-trial or in-court identification. The pho-

cross-examination of Vaughn, moreover, was directed not to Vaughn's inability to observe the seller or remember the transaction but rather to Vaughn's basic credibility. The cross-examination developed that at the time of the alleged transaction Vaughn was a paid informer compensated by Government agents for "useful information," that he was a heroin addict, and that he was obtaining funds from his activities with the Government as a means of feeding his drug habit. The court accordingly cautioned the jury that the testimony of the informer must be examined and weighed with greater care than the testimony of an ordinary witness.[11] The suggestion that Vaughn was not worthy of belief and had strong motivation to lie, reinforced by Wilford's denial of the sale, was the central and crucial issue in the case.

■ The contrast to that of Vaughn, Malloy's testimony concerning his identification of Wilford at the second story window and uncertain identification at the door[12] did raise an issue of the possibility of mistaken identification. Both in his cross-examination of Malloy and in his testimony on direct examination, Wilford raised questions concerning Malloy's opportunity to observe the figure at the second floor. Malloy's testimony, however, was not persuasive standing alone. At best, it merely placed Wilford on the premises near the time of the sale and provided some slight support for the credibility of Vaughn on the crucial point of the identity of the man at the door. The issue of mistaken identification, therefore, was at most tangential to the central question in the case, i. e., Vaughn's credibility. We do not believe that under such circumstances the failure of the trial judge on his own motion to give special cautionary instructions on the issue of mistaken identification was reversible error.[13]

We share the concern expressed by Judge Adams in his dissent on the shortcomings of eyewitness identification testimony. We do not minimize "the vagaries of eyewitness identification" or the hazards such testimony often raises. United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). When convictions obviously turn on the testimony of eyewitnesses who are uncertain, unclear, or inconsistent, the difficulties raised by such evidence are manifest. In such circumstances, a cautionary instruction will help to obviate the danger of erroneous conviction.

■ The dissent apparently believes that an identification charge should have been given in the case sub judice because Malloy's testimony may have strengthened the Government's case in the minds of the jury. As we have indicated, we believe that when the Government's case rests chiefly on the credibility of an actual party to the alleged transaction, and at best only minimally on the identification testimony of another witness, absent a request by counsel, the failure to give a cautionary identification instruction does not constitute plain error.

The facts of every case vary, and the spectrum of the identification issue may

---

tographs were not offered in evidence and are not in the record on appeal. Wilford's contention is without merit absent substantiation in the record that the witness was unable to identify the defendant at the pretrial procedure, *see* United States v. Barber, *supra,* 442 F.2d at 528 (criterion 3), or that the identification procedure was "suggestive."

11. The court charged:
   Now, a word about the testimony of Mr. Vaughn, who was an informer.
   The testimony of an informer who provides useful information against a defend-

ant for pay must be examined and weighed by the jury with greater care than the testimony of an ordinary witness, because the jury must determine whether the informer's testimony has been affected by his interest or by his prejudice against the defendant.

12. *See* note 1 *supra.*

13. Because there was no request we need not decide whether, had a request been made, a failure to grant a request in this case would constitute harmless error.

range from the obvious to the obscure. In view of the many variations of fact and circumstance which must be considered in determining whether a special cautionary instruction should be given, we are reluctant to impose the responsibility for making this determination upon the trial judge. This is and should remain the responsibility of defense counsel. Counsel knows his case, his witnesses, and his strategy. He should have the duty to alert the court to the identification issue, especially when the issue is less than obvious. To hold that it is plain error to fail to give a special charge in the circumstances of this or similar cases would only encourage lethargy on the part of counsel, and would permit counsel to sow the seeds of error by remaining mute until after the verdict is returned.

The judgment of the district court will be affirmed.

ADAMS, Circuit Judge (dissenting):

Many of my own views coincide with those expressed in Judge Rosenn's thoughtful opinion. However, in the circumstances of this case, I regard the failure to give an identification instruction, even though defense counsel did not request one, as prejudicial to the defendant's ability to secure an adequately informed determination of his innocence or guilt. Further, such omission, in my estimation, requires reversal of the judgment of the district court. Accordingly, I respectfully dissent.

It seems settled that the potential for erroneous eyewitness identification at or prior to trial is substantial. The Supreme Court, when dealing with possibly suggestive pretrial identification practices, has emphasized the demonstrably significant likelihood of misidentification in some situations and has sought to provide a degree of protection from attribution of wrongdoing to innocent parties, in part, by augmenting the procedural safeguards available to suspected malefactors.

In United States v. Wade,[1] the Supreme Court, in extending the Sixth Amendment right to counsel to post-indictment lineups, made the following observations:

. . . The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. Mr. Justice Frankfurter once said: 'What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent— not due to the brutalities of ancient criminal procedure.' The Case of Sacco and Vanzetti 30 (1927) . . . A commentator has observed that '[t]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor— perhaps it is responsible for more such errors than all other factors combined.' Wall, Eye-Witness Identification in Criminal Cases 26. Suggestion can be created intentionally or unintentionally in many subtle ways. And the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest.[2] (Footnotes omitted)

The Supreme Court, however, has not yet squarely faced the difficulties presented when a jury, undoubtedly unaware of the possible shortcomings of eyewitness identification testimony, is asked to render a decision of innocence or guilt when such testimony constitutes an important part of the evidence against the defendant. The Court of

1. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). *See also* Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

2. *Id.* at 228–229, 87 S.Ct. at 1933.

Appeals for the District of Columbia however, has abandoned the general rule that a trial judge need not submit a particular charge to the jury absent a request [3] for an instruction relating to eyewitness identification testimony. In Macklin v. United States,[4] the Court of Appeals for the District of Columbia stated that:

> After the Supreme Court has focused on identification problems in *Wade-Gilbert-Stovall* trilogy, it is even more imperative that trial courts include, as a matter of routine, an identification instruction. In cases where identification is a major issue the judge should not rely on defense counsel to request so important a charge.[5]

It might be contended that the rule fashioned in *Macklin* by the Court of Appeals, pursuant to its supervisory power, required a new trial in every case where identification was a major issue and the trial court failed to give an identification instruction. However, United States v. Telfaire [6] effectively eliminates any implication that Macklin leads automatically to such a result.

In *Telfaire*, the Court affirmed a conviction even though an identification instruction had not been given. It concluded, in effect, that the failure so to instruct the jury was harmless error because that case exhibited "none of the special difficulties often presented by identification testimony that would require additional information be given to the jury in order for us to repose confidence in their ability to evaluate the reliability of the identification." [7] The Court added that the eyewitness had "an adequate opportunity to observe" and had made an earlier spontaneous identification. It did, however, set forth a model identification instruction and stated "[that] failure to use this model, with appropriate adaptations, would constitute a risk in future cases that should not be ignored unless there is strong reason in the particular case." [8]

Thus, it appears that the Court of Appeals for the District of Columbia has concluded that in any case where identification is a major issue, the failure to instruct the jury with respect to the possible unreliability of eyewitness identification testimony *must* "be noticed although . . . not brought to the attention of the [trial] court" by way of a request for a specific instruction.[9] The question left open for review by the Court of Appeals for the District of Columbia is whether the error in failing so to instruct "affect[ed] substantial rights." [10]

This Court treated extensively the problems associated with eyewitness identification testimony in United States v. Barber.[11] Although holding that there was no error in the identification charge given by the trial court in that case, this Court, exercising its supervisory power, sought to provide guidance for the district courts in cases where the identification of the defendant is at issue. It stated that:

> . . . where the circumstances surrounding the criminal act gave limited opportunity for observation or utilization of other sensory perception, or where uncertainty is expressed by the witness himself, or exposed by a past history of the witness' statements or demonstrated by cross-examination, the statement of identity should be considered as only an expression of opinion and should be accompanied by

3. *See* United States v. Rickey, 457 F.2d 1027, 1031 (3d Cir. 1972).

4. 133 U.S.App.D.C. 139, 409 F.2d 174 (1969).

5. *Id.* at 178.

6. 133 U.S.App.D.C. 139, 469 F.2d 552 (1972).

7. *Id.* at 556.

8. *Id.* at 557. The model instruction set forth in *Telfaire* was based, in part, on this Court's suggestions in U. S. v. Barber, 442 F.2d 517 (3d Cir. 1971), discussed at greater length *infra*.

9. Fed.R.Cr.P. 52(b).

10. Fed.R.Cr.P. 52(a).

11. 442 F.2d 517 (3d Cir. 1971).

appropriate instructions as to its sufficiency and weight.[12]

The *Barber* court required that instructions satisfy the guidelines followed by Pennsylvania state courts, which arguably establish reversible error if the trial court fails to instruct, even in the absence of a request, when any of the conditions of uncertainty just enumerated are present.[13] However, the *Barber* panel stated that when none of those conditions are present the trial judge need not, at least absent a request, give an identification instruction.

A full appreciation of the uncertainties associated with eyewitness identification testimony and of the judiciary's close attention to the impact of these uncertainties on the fact finding process should temper any decision to designate, or not to designate as plain error a failure to give identification instructions.

I agree with Judge Rosenn that Vaughn's confusion as to the correct name of the defendant did not raise the type of doubts concerning the reliability of Vaughn's eyewitness identification of the defendant that calls for a specific charge. I also agree that *Barber*, unlike *Macklin*, does not appear to preclude the applicability of the plain error rule in situations like this. I concede, however, that in light of the concerns expressed by the Supreme Court and this Court, it is difficult, in the absence of *Telfaire*-type instructions, to contemplate cases in which identification is a major issue where a serious question whether the correct identification has been made. In such situations, plain error would, in all probability, exist.

Although Judge Rosenn's characterization that the "central and crucial issue in the case" is the credibility of Vaughn, the informer, may not be inaccurate, such characterization should not blind us to the important role identification testimony may have played in Wilford's conviction. Vaughn's testimony placing Wilford at the location where the narcotics were sold and implicating Wilford as the seller is corroborated by Agent Malloy's identification of Wilford as the person leaning from a second floor window. If the jury did credit Malloy's testimony—and there is no way that we can ascertain this—the government's case was substantially strengthened. If the jury discounted Malloy's testimony, the government's case was immeasurably weakened. This seems particularly so because the testimony of informants is frequently suspect since they may well believe that convictions will result in better treatment for themselves.[14] Because of these considerations, I would be inclined to view this case as one in which identification is a major issue.

Evidence was introduced by Wilford, chiefly by way of his own testimony, which indicated that Agent Malloy's opportunity to observe may have been impaired by the dim lighting at the housing project. It would appear, therefore, that one of the conditions is present that, under *Barber*, transforms identification testimony from statements of fact into opinions.

Since this Court in *Barber* has recently and thoroughly grappled with the difficulties posed by eyewitness identification testimony, and in my view, such testimony may well have been a compelling factor in the jury's decision in this case, I would not hold that Wilford's failure to request an identification instruction prevents this Court from recognizing the trial court's error in not so charging the jury after Wilford had produced evidence suggesting that Agent Malloy's observations occurred in dim light.

In practice, it seems that a conclusion that plain error exists invariably leads

---

12. *Id.* at 527.

13. *Id.* at 528.

14. *Cf.* Hoffa v. United States, 385 U.S. 293, 311–312, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

to a conclusion that the error is not harmless; for quite frequently the considerations that prompt the former conclusion preclude a decision contrary to the latter.[15] Contrasting this case with *Telfaire* strongly suggests that it is not an aberration. Judge Rosenn apparently acknowledges that the general instructions given here were not as likely to focus the jury's attention on the identification issue as those in *Telfaire*.[16] Further, the witness in *Telfaire* did have an adequate opportunity to observe, and a spontaneous pretrial identification in *Telfaire* buttressed the confidence of the Court of Appeals for the District of Columbia in the reliability of the identification testimony.[17]

The procedure followed in *Telfaire*, suggesting model identification instructions in this type of case, merits further attention. If the trial courts are constantly aware that certain instructions, varied to meet specific cases, are to be given whenever identification is an important issue, it is more likely that the defendant's right to an informed consideration of his case will not be diluted and the number of appeals such as this may well be substantially reduced.[18] On balance, it may be wiser to reverse the defendant's conviction, based in large part on the informant's possession, after allegedly meeting with the defendant, of four glassine packages of heroin, and, at the same time, take the opportunity to provide district courts with more definite guidance with respect to the necessity for and content of identification charges.

Accordingly, I would reverse the judgment of the district court and remand for a new trial.

15. *See* Wright, 3 Federal Practice and Procedure 349, 372–375 (1969).

16. Majority Opinion at 734 n. 9.

17. 469 F.2d at 556.

18. Judge Bazelon has expressed the view that available data indicating that "members

of one race have greater difficulty in accurately identifying members of a different race" demands the inclusion of a reference to this difficulty in any set of model identification instructions. *Id.* at 559–561. *But see id.* at 561–563 (Leventhal, J., concurring).