UNITED STATES of America, Appellee,

v.

Thomas Michael KAVANAGH, Defendant, Appellant.

No. 77–1372.

United States Court of Appeals, First Circuit.

March 20, 1978.

William P. Homans, Jr., Boston, Mass., with whom Homans, Hamilton & Lamson, Boston, Mass., was on brief, for defendant, appellant.

Robert B. Collings, Asst. U. S. Atty., Chief, Crim. Div., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

 A criminal defendant seeks reversal of his bank robbery conviction on the ground that the district court refused to charge in accordance with *Barber v. United States,* 442 F.2d 517, 528 (3d Cir. 1971), that eyewitnesses' identification testimony should be "received with caution and scrutinized with care". We join eight other circuits in approving use of the *Barber* charge, or variations of it, in the discretion of the district court, in cases where the evidence suggests a possible misidentification. Under the circumstances here, however, we conclude that the failure to give the requested charge does not warrant reversal.

At approximately 10:20 a. m. on December 22, 1976, a shopping center branch of the Home National Bank in Milford, Massachusetts was robbed by two men, one of whom was armed. Witnesses at the bank could discern only that the perpetrators, who wore ski masks, were young caucasian males.

The government's case against the defendant [1] was wholly circumstantial. Earlier in the day of the crime, a Boston police officer in Charlestown observed the defendant, Arthur Godfrey, James Devlin, and Michael O'Halloran in Godfrey's mother's Chrysler automobile. Shortly after the crime, that car was found behind one of the shopping center buildings with trunk and passenger door open, keys in the ignition, and motor running. It appeared to have been intended as a "switch" car during the robbery. Inside the vehicle the police discovered two newspapers: the December 14, 1976 edition of *The Star* and a copy of the December 22, 1976 *Boston Herald.* Latent fingerprints later identified as the defendant's were lifted from both newspapers. Also in the car were the wrist bands of a pair of rubber gloves, the hand portions of which were found along the robbers' getaway route.

A Milford police officer who happened to be in the shopping center at the time the crime took place testified that shortly afterwards he observed a Ford automobile speed away from the scene carrying three masked passengers. A check of the license plate number revealed that the car had been stolen the previous day. Police officers traced its route to an embankment at the side of a road, where the car was found abandoned. From there, two sets of footsteps led through the snow into nearby woods and past the homes of two housewives. Both women testified that they had noticed three young male strangers, whose age, hairstyle, and clothing they described, walk down their street approximately 40 minutes after the crime occurred. One woman observed one of the youths separate from the other two. At a later lineup in which the defendant participated, one housewife identified O'Halloran, but not the defendant. The other was unable to make any identification.

From the neighborhood where three youths had been spotted, the chain of circumstances led to a Franklin taxi driver, Peggy Morton. At approximately noon on the day of the crime, two young men hailed her cab near where the two housewives lived. When they asked to go to Boston, Mrs. Morton replied that she could not take them that far, but agreed to deliver them to another taxi driven by her mother, Mrs. Leo O'Connell, who could take them the rest of the way. Mrs. O'Connell and her husband Leo O'Connell drove the young men to Boston. Mrs. Morton then responded to a call to take a different passenger, also a young man, from a restaurant in Bellingham to a Holiday Inn in Framingham.

Both O'Connells and Mrs. Morton were given two opportunities to identify their passengers. Two days after the crime they were each shown the same array of eleven photographs which included O'Halloran and Godfrey, but not the defendant. Mrs. Morton was unable to make an identification. Mr. and Mrs. O'Connell picked O'Halloran

---

1. Although it appeared from the evidence that two men and at least one accomplice had com-

mitted the crime, the defendant was tried alone.

and Godfrey as the passengers they had received from their daughter. On February 4, 1977, a lineup was conducted which included the defendant, O'Halloran, Godfrey, Devlin, and five other males. Mrs. Morton chose the defendant and Devlin as the pair of young men who had flagged down her taxi. She also pointed out O'Halloran, whose photograph she had previously seen but not selected, as the lone passenger she had driven from Bellingham to Framingham. Mr. O'Connell, who had previously identified O'Halloran and Godfrey as his wife's passengers, chose the defendant and Devlin from the lineup. His wife also changed her mind, picking Devlin and another unidentified male. At trial, only Mrs. Morton was called by the government to identify the defendant as one of the individuals Mrs. O'Connell drove to Boston. The prior inconsistent identifications of all three witnesses were elicited by the defense. The defendant denied participation in the crime and gave an alibi.

At the close of the evidence, the district court refused the defendant's request to charge the jury as follows:

> "Testimony of witnesses as to identify [sic] must be received with caution and scrutinized with care. The burden of proof of the Government extends to every element of the crime charged, including the burden of proving beyond a reasonable doubt the identity of the perpetrator of the offense for which he stands charged."

The dangers inherent in eyewitness identifications of strangers have been well chronicled. *See Simmons v. United States,* 390 U.S. 377, 383–84, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1967); *United States v. Wade,* 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1966); *Macklin v. United States,* 133 U.S.App.D.C. 139, 140, 409 F.2d 174, 175 (1969); *Gregory v. United States,* 125 U.S.App.D.C. 140, 145, 369 F.2d 185, 190 (1966). Courts have become increasingly sensitive to the need to alert jurors to the vagaries of identification testimony by stressing the government's obligation to prove a defendant's identity beyond a reasonable doubt and by focusing the jurors' attention on the shortcomings of such proof. *See Macklin v. United States, supra; Gregory v. United States, supra.*

In *United States v. Barber, supra,* 442 F.2d at 528, the Third Circuit first spelled out the necessary elements of an identification charge. Exercising its supervisory power over district courts to adopt the approach taken by the Pennsylvania state courts, it required that juries be charged that identification testimony may be treated as a statement of fact if the following circumstances are present: (1) the witness has had an opportunity to observe; (2) the resulting identification is positive; (3) the witness' identification is not undermined by a prior failure to identify or misidentification; and (4) the identification remains unqualified and certain after full cross-examination, *id.* If one or more of those conditions is absent, the jury is to be instructed that the identification testimony "must be received with caution and scrutinized with care", and reminded that the government has the burden of establishing the defendant's identity beyond a reasonable doubt, *id.* The *Barber* charge, if counsel requests it, is mandatory in the Third Circuit, *see United States v. Wilford,* 493 F.2d 730, 733 (3d Cir. 1974); *United States v. Zeiler,* 470 F.2d 717, 720 (3d Cir. 1972); *United States ex rel. Reed v. Anderson,* 461 F.2d 739, 744 (3d Cir. 1972) (en banc).

Drawing from *United States v. Barber,* the Court of Appeals for the District of Columbia similarly established a model charge to be routinely given when the evidence demonstrates a danger of misidentification. *United States v. Telfaire,* 152 U.S. App.D.C. 146, 152, 469 F.2d 552, 558 (1972). The precise wording of the model charge is not required. It may be adapted, in the discretion of the district court, to fit the evidence in each case, *id.* at 151, 469 F.2d at 557. That approach has been followed by the Seventh and Fourth Circuits, both of which have announced that they will view the failure to give an identification instruction with "grave concern". *United States v. Hodges,* 515 F.2d 650, 653 (7th Cir. 1975);

*United States v. Holley,* 502 F.2d 273, 275 (4th Cir. 1974).[2] Four of the remaining circuits have approved the concept of giving a special identification charge in appropriate circumstances, but have vested broad discretion in the district courts to frame the language and content of it. *United States v. Dodge,* 538 F.2d 770, 784 (8th Cir. 1976); *United States v. Masterson,* 529 F.2d 30, 32 (9th Cir. 1976); *United States v. O'Neal,* 496 F.2d 368, 373 (6th Cir. 1974); *United States v. Fernandez,* 456 F.2d 638, 644 (2d Cir. 1972). Only the Tenth Circuit has declined to endorse a particularized identification charge. *McGee v. United States,* 402 F.2d 434, 436 (10th Cir. 1968).[3]

■ In view of such precedent, we conclude that the requested charge would have been appropriate here. The trustworthiness of the eyewitness identifications was an important factual issue for the jury to resolve. *See United States v. Holley, supra,* 502 F.2d at 274; *United States v. Wilford, supra,* 493 F.2d at 735. Mrs. Morton, who had viewed O'Halloran's photograph, at first made no identification, but later, at the lineup, chose O'Halloran as the single passenger she had taken to Framingham. From the photographic array Mr. O'Connell selected O'Halloran and Godfrey as his wife's riders but pointed out the defendant and Devlin at the lineup. His wife also changed her mind, identifying O'Halloran and Godfrey as her passengers from the photographs, then Devlin and another individual at the lineup. With so many waffling selections, a formal call on the part of the court to alertness to the danger of misidentification would have been a useful precaution.[4] *Compare United States v. Holley, supra,* 502 F.2d at 275 *with United*

*States v. Dodge, supra,* 538 F.2d at 784. There would appear to be no reason for not giving such a charge, particularly if counsel so requested. *Compare United States v. Roundtree,* 527 F.2d 16, 19 (8th Cir. 1975) *and United States v. Wilford, supra,* 493 F.2d at 733 *with United States v. Hodges, supra,* 515 F.2d at 653.

■ While we approve the instruction submitted by the defendant, under the circumstances here, the failure to give it is not reversible error. Defense counsel focused heavily on the possibility of misidentification through skillful cross-examination of the government's witnesses and introduction of Mr. O'Connell's testimony during presentation of the defense case. *See United States v. Amaral,* 488 F.2d 1148, 1151 (9th Cir. 1973); *United States v. Shelvy,* 148 U.S.App.D.C. 1, 458 F.2d 823, 824 (1972); *but see United States v. Hodges, supra,* 515 F.2d at 653. The closing charge to the jury fully covered the elements required to find the defendant guilty beyond a reasonable doubt and emphasized the government's burden of proof. *See United States v. Kimbrough,* 528 F.2d 1242, 1248 (7th Cir. 1976); *Cullen v. United States,* 408 F.2d 1178, 1181 (8th Cir. 1969). Ample attention was given to the jury's exclusive role in assessing the credibility and weight of the evidence. *See United States v. Evans,* 484 F.2d 1178, 1187 (2d Cir. 1973); *but see United States v. Hodges, supra,* 515 F.2d at 653. Many of the causes of discrepancies among the witnesses were enumerated for the jury, including "inattention at the time the event was happening, the lapse of time, the failure of memory, a defective sense of hearing or sight . . . ." *See United States v. O'Neal, supra,* 496 F.2d at 373.

2. Reversal was not ordered in *United States v. Telfaire,* 152 U.S.App.D.C. 146, 152, 469 F.2d 552, 558 (1972) because the evidence did not raise the specter of misidentification. By contrast in *United States v. Hodges,* 515 F.2d 650 (7th Cir. 1975) and *United States v. Holley,* 502 F.2d 273 (4th Cir. 1974), the possibility that the wrong man had been convicted was sufficiently great to warrant a new trial.

3. To date the Fifth Circuit has not ruled on the issue.

4. The need for a focused identification charge increases where an out of court identification was made under suggestive circumstances. *See United States v. Sambrano,* 505 F.2d 284, 286 (9th Cir. 1974); *United States v. Fernandez,* 456 F.2d 638, 642 (2d Cir. 1972). Here there was no allegation that either the photographic selection or the lineup violated the standards set forth in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1967) and *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1966).

Unlike those cases in which the failure to give the *Barber* or *Telfaire* charge resulted in reversal, the government's case against this defendant did not hinge on possibly mistaken identification testimony alone. *See United States v. Hodges, supra,* 515 F.2d at 651; *United States v. Holley, supra,* 502 F.2d at 274. Independent evidence connected the defendant with the crime. His fingerprints were lifted from two newspapers left in the "switch" car found abandoned at the scene. *See United States v. Masterson, supra,* 529 F.2d at 31; *United States v. Johnson,* 495 F.2d 377, 378 (4th Cir. 1974). The edition of the *Herald* was dated the day of the crime, suggesting that the defendant had been in the car shortly before the robbery took place. The match between the wrist bands of the rubber gloves found in the car at the shopping center and the hand portions, discovered along the getaway route, further tightened the links between the earlier passengers of the car, one of whom was the defendant, and the crime. The thoroughness of the charge given and the strength of the other evidence of guilt rendered the failure to give defendant's suggested identification charge not prejudicial. *See United States v. Evans, supra,* 484 F.2d at 1187.

We are tempted to join the majority of other circuits by announcing that in the future the preferred practice in this circuit will be to give a particularized identification charge at the request of counsel when the evidence establishes a factual basis for it. But, for the present at least, we resist the temptation. We do so, not because we value the importance of accurate identification less, but because we are reluctant to multiply the catalogue of mandated charges in the absence of specific experience pointing to a felt need. We are confident that district courts will, in situations where misidentification is a real risk, remind jurors of their critical task of assessment.

*The judgment of the district court is affirmed.*