COMMONWEALTH vs. CLYDE ALLEYNE, JR.

Suffolk.   April 10, 1980. — June 9, 1980.

Present: HALE, C.J., ARMSTRONG, & KASS, JJ.

*Identification.*

At a criminal trial at which the only issue was that of identification, the
    judge's charge with respect to identification testimony, although not in
    the language of the model requested by the defendant and subsequent-
    ly approved by the Supreme Judicial Court in *Commonwealth* v.
    *Rodriguez*, 378 Mass. 296 (1979), adequately directed the jury's atten-
    tion to the question of possible mistaken identification and laid no
    stress on the veracity of a particular witness.   [29-31]

INDICTMENT found and returned in the Superior Court
Department on November 15, 1978.

The case was tried before *Sullivan*, J.

*Hugh W. Samson* for the defendant.

*Michael J. Traft*, Assistant District Attorney, for the
Commonwealth.

HALE, C.J.   The defendant was convicted on an indict-
ment charging robbery and has appealed.   We summarize
the evidence relevant to this appeal.

On September 4, 1978, at about 9:30 P.M. the victim and
her three children, aged 7, 8, and 11, were walking home
on a residential street in Brighton which was illuminated by
street lights.   She felt something touch her shoulder.   She
turned to see a man's face and a knife pointed at her throat.
She was struck with fear for herself and for her children.
The man took her shoulder bag and demanded her rings.
She removed five rings, which the man took.   While this
was happening, her children ran across the street, scream-
ing for help.   During the three to five minute period in
which the victim said the incident occurred, she looked at

her assailant at intervals and also looked around toward her children. She noted his eyes and the details of his face. The children's screams attracted the attention of passersby. When the police arrived the assailant had fled. The victim described her assailant to the police, informing them of his facial features, that he was young, seventeen or eighteen, and thin. She also told them he had long sideburns and "thinning, wiry kind of hair." She could not recall whether he had hair on his chin, but asserted that he did not have a mustache. She and her children were taken to a police station, where she examined books of photographs of males classified only as to age group. She selected a card with two pictures of the defendant which she identified as being of her assailant. The victim was the only identifying witness called by the Commonwealth. Her daughter was called as the only witness for the defense. The daughter testified that when her mother selected the photograph she said, "[T]his one looks a little bit like the person . . . ." The daughter then made an in-court identification of the defendant as the person she saw rob her mother. There was also evidence that the defendant lived three blocks away from the scene of the crime.

The only issue at trial was that of identification. The defendant filed detailed requests for instructions which were based largely on the charge in *United States* v. *Telfaire*, 469 F.2d 552, 558-559 (D.C. Cir. 1972). Before charging the jury, the judge indicated to counsel that he would not give instructions in the form requested but would "cover the issues of identification" and generally indicated how he would do so.

At the conclusion of the judge's charge defense counsel, though conceding that the judge gave most of his requested instructions, took exception to his failure to give some of them which counsel indicated by number. The judge reexamined the requests but made no further charge on them. The defendant argues to us that the judge erred in failing to instruct the jury adequately on the issue of identification.

In *Commonwealth* v. *Rodriguez*, 6 Mass. App. Ct. 738, 742-743 (1978), *S.C.* 378 Mass. 296, 301-302 (1979), it was indicated that where a defendant fairly raises a question of mistaken identification he may be entitled to specific instructions designed to assist the jury in evaluating identification testimony. The facts of the present case call for such instruction.

In *United States* v. *Telfaire, supra,* the Court of Appeals for the District of Columbia Circuit adopted a model instruction for trial judges to use, with appropriate changes, to focus the attention of juries on identification issues. The court did not compel the use of this model and recognized that it should be revised and adapted to suit the proofs and contentions of a particular case. *Id.* at 557. That model was generally approved by the Supreme Judicial Court in *Commonwealth* v. *Rodriguez*, 378 Mass. at 302 (1979). That court also did not require that specific language of the model be used, stating that "a defendant who fairly raises the issue of mistaken identification might well be entitled to instructions of the type here requested," (*id.*) thus leaving the exact language of a particular charge to the judge's discretion. See *United States* v. *Kavanagh*, 572 F.2d 9, 11-13 (1st Cir. 1978).

In examining the charge in this case we bear in mind that although the judge's attention was called to this court's *Rodriguez* opinion and to the *Telfaire* and *Kavanagh* cases before he gave his charge, the Supreme Judicial Court had yet to issue its opinion in the *Rodriguez* case.

The parts of the charge on the presumption of innocence, on reasonable doubt and on burden of proof were clearly and correctly stated. The judge instructed the jury that they could find the defendant guilty only if they found beyond a reasonable doubt the existence of all of the elements of the crime and that the defendant was the one who committed the crime. He then told the jury, "I want to put it another way. The burden is upon the Commonwealth to establish two things: That a crime was committed and that the defendant committed the crime." He reminded the jury

on two more occasions that the real dispute was whether the robbery was committed by the defendant. At the conclusion of his charge he again reminded the jury that the most important issue before them was "whether the defendant was the perpetrator of the robbery."

As to the testimony of the identifying witnesses, the judge informed the jury that their consideration of that testimony was limited to what the witnesses had had an opportunity to and did in fact observe. He told them that they had "to make a judgment about that opportunity, and you have to make a judgment about the fact of observation. The facts that you remember and how the testimony came across to you and make a judgment in accordance with the burden of proof . . . I discussed with you." He then instructed them, "You do not have to find to disbelieve a witness that the witness is intentionally telling a falsehood. The witness can be mistaken. So, you eliminate questions of mistake if you are going to believe the witness as well as questions of intentional falsehoods . . . ."

The judge also drew the jury's attention to the conflicting testimony of the victim and her daughter as to what the victim had said at the police station when she selected the defendant's photograph, telling them, "[I]t may very well be that there may be something that gives you concern about the identification as the result of that . . . evidence."

We are satisfied that the charge adequately directed the jury's attention to the question of a possible mistaken identification and laid no stress on the veracity of a particular witness as was the case in *Commonwealth* v. *Rodriguez*, 6 Mass. App. Ct. at 743-744.

*Judgment affirmed.*