## COMMONWEALTH vs. PAUL E. DURANT.

Suffolk. October 10, 1980. — December 8, 1980.

Present: GREANEY, ROSE, & KASS, JJ.

*Practice, Criminal,* Instructions to jury, Location of defendant in court-room, Argument by prosecutor. *Identification.*

At a criminal trial, the judge's charge adequately directed the jury's atten-tion to the question of a possible mistaken identification and laid no stress on the veracity of any particular witness. [770-773]

A defendant was not entitled to a new trial by reason of the judge's denial of his motion to sit at counsel table without a statement of reasons where the case was tried prior to the decision in *Commonwealth* v. *Moore,* 379 Mass. 106 (1979), in which the Supreme Judicial Court es-tablished standards to alleviate the difficulties inherent in the use of the dock, where it appeared that the judge may have acted out of a concern for security, and where the defendant was not prejudiced by his presence in the dock. [773-774]

At a criminal trial, any possibility that the prosecutor's use of a metaphor incorrectly describing the jury's obligation with respect to weighing identification testimony might have misled the jury as to the place-ment or nature of the burden of proof was effectively dispelled by the judge's instructions. [774]

INDICTMENTS found and returned in the Superior Court Department on October 6, 1978.

The cases were tried before *Barton, J.*

*Robert A. Sherman* for the defendant.

*John A. Kiernan,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant was convicted by a jury on indictments charging armed robbery, rape, and entering a dwelling while armed with intent to commit a felony. He now contends (through counsel other than his trial counsel) that the judge erred by (1) giving incomplete and inade-quate jury instructions on the question of identification;

(2) denying the defendant's motion for permission to sit at counsel table; and (3) failing to cure certain remarks made by the prosecutor in his summation. We find no error and affirm the convictions.

The Commonwealth introduced identifications of the defendant made by the victim and her next-door neighbor. The victim's identifications were based on observations of her assailant made at two separate times on the day of the incident. The first encounter occurred about 11:30 A.M. and lasted approximately five minutes, when a man appeared at the victim's door, inquired as to the whereabouts of her brother-in-law, and then left. The second encounter occurred at about 2:30 P.M., when the same man reappeared, entered the home and bound the victim. During the next thirty to forty minutes, he ransacked the house, threatened the victim at knifepoint, sexually assaulted her and instructed her not to "recognize" him.[1] After the incident, the victim provided the police with descriptions of the assailant and his automobile.[2] The next day she selected the defendant's picture from a thirteen-photograph array. Subsequently, a second identification of the defendant was made by the victim when she picked him out from a group of eight to ten persons congregating in the rotunda area of the West Roxbury District Court.[3] The victim's neighbor based her identification on her observations of a man acting suspiciously near an automobile parked by the victim's home. She testified that she watched the man over an ap-

---

[1] The victim testified that she had occasion to observe her assailant for approximately fifteen minutes of the thirty-to-forty minute period during which he was in the house.

[2] She testified that the man was about six feet two inches tall, that he weighed about 250 pounds, that he had reddish-brown hair and that he was wearing a navy blue suit and sunglasses. She noticed that he had arrived in a 1974 or 1975 Buick LeSabre automobile.

[3] The judge denied the defendant's motion to suppress these out-of-court identifications, and no question is raised as to his implicit ruling that neither the photographic selection nor the District Court identification violated the standards set forth in *United States* v. *Wade*, 388 U.S. 218 (1967); *Simmons* v. *United States*, 390 U.S. 377 (1968), and their progeny.

proximate forty-minute period, during which she had him in her field of vision on three separate five-minute occasions. Her descriptions of the person and his automobile generally corresponded with those provided by the victim,[4] and when later shown a photographic array she selected the defendant's picture as resembling the person she had observed at the scene.  The defendant presented five alibi witnesses. Four of these witnesses (his wife, two children and a friend) placed the defendant at home during some or all of the critical times.  The fifth witness, a television repairman, identified the defendant as the man he had seen on the day of the incident for a "few seconds" sometime between 11:35 A.M. and 12:15 P.M. while the repairman was at the defendant's home checking a defective television set.[5]

1.  Prior to closing arguments, defense counsel made a timely request for instructions in the form set forth in the margin.[6]   The judge (see now Mass.R.Crim.P. 24(b), 378 Mass. 895 [1979]), informed counsel that he would not formally pass on the request at that time but that they should listen to the charge and make their objections known

---

[4]This witness testified that the man she observed had a "stockyish frame, dark-rimmed glasses, brownish-reddish hair [and was] about middle-aged."  She described the car as a gold-colored four door sedan.

[5]There was evidence at the trial which challenged the truthfulness and accuracy of the testimony of all the alibi witnesses, including the testimony of the television repairman.

[6]"One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime.  The Government has the burden of proving identity to that degree of moral certainty that amounts to proof beyond a reasonable doubt so as to preclude any possibility of mistake having been made.  You, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him.  If you are not so convinced beyond a reasonable doubt that the accused is the person who committed the crime, you must find him not guilty.

"Testimony tending to prove identification shall be received with caution and scrutinized with care.  The possibility of human error or inadvertent mistake are elements that you must act on in considering testimony relative to identification.  In analyzing these factors you must be satisfied beyond a reasonable doubt as to the accuracy of the witnesses' identification."

at its conclusion. The instructions given by the judge as to the evaluation of the identification testimony are set forth in full in the margin.[7] At the conclusion of the charge, defense counsel took exception to the judge's failure to give the requested instructions and in particular objected to his failure to give the instruction contained in the second paragraph.

At the time of the trial, the judge was aware of this court's decision in *Commonwealth* v. *Rodriguez,* 6 Mass. App. Ct. 738 (1978), *S.C.,* 378 Mass. 296 (1979), which indicated that a case legitimately raising a question of mistaken identification would require specific instructions designed to assist the jury in their appraisal of the identification evidence. That decision condemned instructions which explicitly linked analysis of the issue to the credibility of the witnesses. The judge's attention was also called to the First Circuit Court of Appeals' opinion in *United States* v. *Kavanagh,* 572 F.2d 9, 11-13 (1st Cir. 1978), which held that a defendant is entitled to a charge on identification testimony when its trustworthiness is an important factual issue for the

---

[7]"The burden is on the Commonwealth to prove beyond a reasonable doubt not only that the offenses were committed as alleged in the indictments but that this defendant was the person who committed them. In considering whether the Commonwealth has proved beyond a reasonable doubt that this defendant is the person who committed the offenses, you may consider any one or more of the following: No. 1, the witness's opportunity to observe the criminal acts and the person committing them, including the length of the encounter, the distance between the various parties, the lighting conditions at the time, the witness's state of mind at the time of the offense, and other circumstances affecting the witness's opportunity to observe the person committing the offense that you deem relevant; No. 2, any subsequent identification, failure to identify, or misidentification by the witness, the circumstances surrounding that identification, the certainty or lack of certainty expressed by the witness, the state of mind of the witness at the time, and other circumstances bearing on the reliability of the witness's identification that you deem relevant; No. 3, any other direct or circumstantial evidence which may identify the person who committed the offense charged or corroborate or negate the identification by the witness. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If the circumstances of the identification of the defendant are not convincing beyond a reasonable doubt, then you must find the defendant not guilty."

jury to resolve. That decision declined to adopt a specific charge on the subject, relying instead on the assumption that trial judges would, "in situations where misidentification is a real risk, remind jurors of their critical task of assessment." *Id.* at 13.[8] Subsequent to these two decisions and to the trial, the Supreme Judicial Court issued its opinion in the *Rodriguez* case, in which it approved the use of certain model instructions on identification drawn from the charge discussed in *United States* v. *Telfaire*, 469 F.2d 552, 558-559 (D.C. Cir. 1972). But this decision left the exact wording of a particular charge to the trial judge's discretion. See *Commonwealth* v. *Rodriguez*, 378 Mass. at 302, app. 310-311; *Commonwealth* v. *Alleyne, ante* 28, 30 (1980).

Our examination of the identification instructions given in this case in the context of the impressions made by the charge as a whole (*Commonwealth* v. *Ramey*, 368 Mass. 109, 114 [1975]; *Commonwealth* v. *Ware*, 5 Mass. App. Ct. 506, 509 [1977], *S.C.*, 375 Mass. 118 [1978]) satisfies us that the charge adequately covered the question. Defense counsel focused heavily on the possibility of misidentification through able cross-examination of the Commonwealth's witnesses, and he forcefully argued the discrepancies and infirmities in the identification testimony to the jury. The judge's charge to the jury fully covered the presumption of innocence and the elements required to find the defendant guilty beyond a reasonable doubt. The charge emphasized the government's burden of proof and gave special attention to the requirement that the prosecution establish "beyond a reasonable doubt that this defendant is the person who committed the offenses." Ample consideration was given as well to the jury's exclusive role in assessing the credibility

---

[8] It is significant to note that the trial judge in the *Kavanagh* case failed to give any instructions on the identification testimony but that the error was found to be harmless based on the thoroughness of the charge as a whole, defense counsel's effective presentation of the misidentification question and the existence of other circumstantial evidence pointing to the defendant's guilt.

and weight of the evidence generally separate and apart from their assessment of the identification testimony. There were also instructions on the alibi evidence with a specific reminder to the jury that any reasonable doubt raised by that evidence would require an acquittal. An examination of the identification instructions (see note 7, *supra*) reveals that most of the salient features in the *Telfaire* model were enumerated. We do not construe the last two sentences of the instructions as submerging the crucial issue of identification or as undermining the defense; nor do we see anything in the *Rodriguez* decisions or in *Commonwealth* v. *Bowden*, 379 Mass. 472, 478-479 (1980), which requires that the words "honest mistake" be uttered by the judge in the course of his charge. We thus conclude that "the charge adequately directed the jury's attention to the question of a possible mistaken identification and laid no stress on the veracity of a particular witness . . . ." *Commonwealth* v. *Alleyne, supra* at 31. See *Commonwealth* v. *Napolitano*, 378 Mass. 599, 608-610 (1979).

2. The defendant's request that he be permitted to sit at counsel table was denied by the judge without a statement of reasons. It is now argued that the judge's ruling constituted an abuse of discretion and that the defendant's confinement to the dock stripped him of his presumption of innocence.

We do not think that the judge's ruling requires reversal. The case was tried prior to the First Circuit's decision in *Walker* v. *Butterworth*, 599 F.2d 1074, cert. denied, 444 U.S. 937 (1979), and the Supreme Judicial Court's decision in *Commonwealth* v. *Moore*, 379 Mass. 106 (1979). The court in *Moore* took cognizance of the *Walker* decision and its statements as to the difficulties inherent in the use of the dock. The standards discussed in *Moore* to alleviate the problem have been held to be "clearly prospective." *Commonwealth* v. *Guy*, 9 Mass. App. Ct. 318, 319 (1980). No sharp constitutional objection was made by the defendant when his motion was denied, and there are implications in the record that the judge may have acted out of a concern for security. Moreover, there is no claim that counsel could

not adequately communicate with the defendant or that the defendant was unable to assist in his own defense. There was no "request that the defendant be seated elsewhere in the courtroom when the victim [and her neighbor were called] to identify the accused." *Commonwealth* v. *Guy, supra* at 320. Although the in-court identification testimony necessarily referred to the defendant's presence in the dock, we think that the judge's thorough instructions on the presumption of innocence and the burden of proof "were sufficient to extinguish any remote possibility that the jury might have been prejudiced . . . ." *Commonwealth* v. *Moore, supra* at 111. See also *Commonwealth* v. *Campbell,* 378 Mass. 680, 697 n. 14 (1979).

3. The prosecutor's statement in closing argument that the victim's identification testimony, if found truthful and accurate, should be placed "into the balance scale" and weighed against the defense testimony "on the other side of the scale," interjected an unfortunate metaphor into what was an otherwise proper line of argument to the jury that they should look to the quality rather than the quantity of the evidence and that they should reject the defendant's alibi testimony. We do not think that the judge was obliged to honor the defendant's request to give cautionary instructions on the spot. In our opinion, any possibility that the prosecutor's rhetorical device might have misled the jury as to the placement or nature of the burden of proof was effectively dispelled by the judge's closing instructions which restored the scales to their proper constitutional balance. See generally *Commonwealth* v. *Grammo,* 8 Mass. App. Ct. 447, 456-458 (1979); *Commonwealth* v. *Snyder, post* 896 (1980), and cases cited.

*Judgments affirmed.*