## COMMONWEALTH vs. PAUL CONCEICAO.

Bristol.   November 2, 1982. — February 28, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Assistance of counsel. *Practice, Criminal*, Assistance of counsel, Postconviction relief, Appeal, Instructions to jury. *Identification*.

Discussion of the extent of an indigent criminal defendant's right to have counsel appointed to represent him in postconviction proceedings. [258-262]

No constitutional violation resulted from a judge's declining to appoint counsel to prepare and present an indigent criminal defendant's motion for a new trial, where the judge considering the motion had also presided at the original trial, the errors adduced by the defendant related either to the judge's charge to the jury or to claims of ineffectiveness of trial counsel on matters with which the judge was already familiar, and the judge properly concluded that the issues asserted were without merit. [262-263]

Rule 30 (c) (5) of the Massachusetts Rules of Criminal Procedure did not require a judge to appoint counsel to prepare and present an indigent criminal defendant's motion for a new trial. [263-264]

Failure of defense counsel at a criminal trial to move to suppress photographic identifications made by a robbery victim did not violate defendant's constitutional right to effective assistance of counsel, where such a motion would have had only minimal chance of success, and where a decision not to file the motion was tactically defensible. [264-265]

At a criminal trial, the judge's instructions to the jury sufficiently explicated the issue of misidentification so that, in the circumstances, defense counsel's not requesting more extensive instructions was not a violation of the defendant's constitutional right to effective assistance of counsel. [265-266]

At a criminal trial, defense counsel's not objecting to the phrase "moral certainty" in the judge's instructions to the jury which, read as a whole, adequately apprised them of the standard of proof beyond a reasonable doubt, did not violate the defendant's constitutional right to effective assistance of counsel. [266-267]

Where a judge's reference to the appellate process in his charge to the
jury at a criminal trial did not constitute reversible error, defense
counsel's failure to object did not violate the defendant's constitutional
right to effective assistance of counsel. [267-268]
At a criminal trial, the judge's instructions to the jury on the presumption
of innocence were proper. [268]


INDICTMENT found and returned in the Superior Court
Department on February 12, 1979.

The case was tried before *Taveira*, J., and a motion for a
new trial, filed on March 11, 1981, was considered by him.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Maureen B. Brodoff* for the defendant.

*Phillip L. Weiner,* Assistant District Attorney (*Patricia
O. Ellis,* Assistant District Attorney, with him) for the
Commonwealth.

HENNESSEY, C.J.   The defendant, Paul Conceicao, was
convicted by a jury of the unarmed robbery of Albert Le-
Boeuf and sentenced to the Massachusetts Correctional
Institution at Walpole for a term of seven to fifteen years.
The defendant appealed and the conviction was affirmed
by the Appeals Court in *Commonwealth* v. *Conceicao,* 10
Mass. App. Ct. 899 (1980).  Both at trial and on appeal to
the Appeals Court the defendant was represented by court-
appointed counsel.

On March 11, 1981, the defendant, pro se, filed a motion
for a new trial, pursuant to Mass. R. Crim. P. 30, 378 Mass.
900 (1979), accompanied by other motions, including a mo-
tion for appointment of counsel and an affidavit of indigen-
cy.  In his motion for a new trial, the defendant challenged
portions of the trial judge's charge to the jury dealing with
reasonable doubt, presumption of innocence, right of ap-
peal, and joint enterprise.  He also asserted that he was
denied effective assistance of counsel because his trial coun-
sel failed to seek production of certain photographs that the
police showed to an identification witness, failed to seek

suppression of such identification, and failed to object to certain testimony of a police officer. The judge denied the motion for a new trial without a hearing. In view of his action on the defendant's new trial motion, the judge declined to take any action on the defendant's motion for appointment of counsel. The defendant then filed a notice of appeal to the Appeals Court. He also submitted a motion for appointment of counsel to represent him on his appeal, which was allowed. We removed the case to this court on our own motion.

On this appeal, the defendant argues that the United States Constitution, the Massachusetts Declaration of Rights, and Mass. R. Crim. P. 30 entitle him to appointed counsel in presenting his motion for a new trial. The defendant also argues most of the issues raised in his motion for a new trial.[1] He further asserts, for the first time on this appeal, that he was denied effective assistance of counsel because his trial counsel failed to request the trial judge to instruct the jury on the issue of misidentification and that the judge, sua sponte, should have charged on this issue. We reject all the defendant's contentions and we therefore affirm the denial of the defendant's motion for a new trial.

In August, 1978, around 1 A.M., Albert LeBoeuf was in his car in New Bedford. LeBoeuf was approached by a woman, later identified as Maureen Pullman, who asked him if he wanted to go out. LeBoeuf accepted, a price was discussed, and the two drove to a parking lot next to some apartments on Elm Street in New Bedford. LeBoeuf got out of the car, turned around, and saw two men, one of whom he later identified as the defendant. The man with the defendant pointed at the defendant and said to LeBoeuf, "What are you doing with his old lady?" The defendant

---

[1] The defendant does not raise any joint enterprise issues, which were the only issues addressed by the Appeals Court in *Commonwealth* v. *Conceicao*, 10 Mass. App. Ct. 899 (1980). He also does not argue that he was denied effective assistance of counsel by his trial counsel's failure to seek production of the identification photographs.

then struck LeBoeuf, knocking him to the ground, and Le-Boeuf lost consciousness.

When he awoke, he ran from the parking lot, where the defendant, the woman, and the other man were still standing. LeBoeuf noticed that money was missing from his pocket. He telephoned a friend who accompanied him to a police station. LeBoeuf told the police that his car had been stolen, that he had been dragged out of his car, beaten up, and robbed by four men. He described one of the men, but his description did not match the defendant. Later that day, the police again questioned LeBoeuf, and he told the police about the woman and the two men and the incident that occurred in the parking lot. The police report contained no description of either Maureen Pullman or the defendant. LeBoeuf picked out photographs of Pullman and the defendant from an array of photographs shown him by the police.

1. *Constitutional Right to Have Counsel.*

The defendant's first argument is that the State and Federal Constitutions require appointment of counsel to assist indigent defendants in preparing and presenting motions for a new trial. The defendant relies on *Douglas* v. *California,* 372 U.S. 353, 355-356 (1963), where the United States Supreme Court established a per se rule that a State is bound constitutionally to provide counsel for an indigent defendant on his first appeal as of right. The defendant in this case acknowledges, however, that indigent defendants do not have an absolute right to have counsel appointed to represent them in all postconviction proceedings. Indeed, in *Ross* v. *Moffitt,* 417 U.S. 600, 609-616 (1974), the Court concluded that neither the due process clause nor the equal protection clause of the Fourteenth Amendment requires a State to provide an indigent defendant appointed counsel to represent him on a discretionary appeal to a State supreme court. The Court noted that, although a State has no duty to provide an appellate process, once it chooses to allow appeals, it may not single out indigent defendants and deny them meaningful access to the appellate system because of

their poverty. *Id.* at 611. See also *Douglas, supra* at 357. The Court determined, however, that, even though an indigent defendant may be benefited by an appointment of counsel on a discretionary appeal, "[t]he duty of the State . . . is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process." *Ross* v. *Moffitt, supra* at 616. That opportunity, the Court concluded, was provided to the defendant in *Ross*.[2]

Hence, in *Ross*, the Supreme Court clearly determined that an indigent defendant does not have an absolute right to have counsel appointed at all postconviction proceedings.[3] See also *Gagnon* v. *Scarpelli*, 411 U.S. 778, 788-789 (1973) (indigent defendant's right to have counsel appointed to represent him at probation revocation hearing must be decided on case-by-case basis). See generally Note, Criminal Procedure — Post-Conviction Right to Counsel, 77 W. Va.

---

[2] The Court stressed that, in North Carolina, at the time indigent defendants seek discretionary review in the State Supreme Court, they have a transcript of the trial proceedings, a brief that was submitted by counsel in the appeal as of right, and in many cases an opinion by the intermediate appellate court. *Ross* v. *Moffitt*, 417 U.S. 600, 615 (1974). The Court also noted that the function of discretionary review by the North Carolina Supreme Court is not to examine every case to determine whether there has been a correct adjudication of guilt. *Id.* Rather, the critical issue, the Supreme Court explained, is whether the subject matter of the appeal has significant public interest or involves important legal principles or whether the decision below is in probable conflict with a decision of the State Supreme Court. *Id.* In these aspects, we note, the North Carolina procedures closely parallel the statutory criteria for appellate review by the Supreme Judicial Court. See G. L. c. 211A, § 10 (A).

[3] The Court also held that indigent defendants do not have a constitutional right to have counsel appointed to assist them in preparing a petition for a writ of certiorari for submission to the United States Supreme Court. *Ross* v. *Moffitt, supra* at 617-618. The Court based its determination on the same factors as its principal holding as well as on the additional ground that the rationale of *Douglas* v. *California*, 372 U.S. 353 (1963), applies only where a State-created right of review is at issue. *Ross, supra* at 617-618.

L. Rev. 571 (1975). The Court, however, has not identified clearly the proceedings at which indigent defendants are entitled, as a general rule, to have counsel appointed.

We are aware of only one case where a court has addressed an indigent defendant's right to have counsel appointed to represent him on a motion for a new trial. In *Dirring* v. *United States*, 353 F.2d 519, 520 (1st Cir. 1965), the United States Court of Appeals for the First Circuit summarily concluded that the Federal Constitution does not require a court to appoint counsel to represent an indigent defendant in presenting a motion for a new trial. Rather, the court determined, "[a]fter final conviction the appointment of counsel must rest in the discretion of the court." *Id.* In analogous cases, courts have determined that indigent defendants do not have an absolute right to be provided with a free trial transcript to aid them in preparing a motion for a new trial. See *United States* v. *Banks*, 369 F. Supp. 951, 955 (M.D. Pa. 1974); *People* v. *Martinez*, 174 Cal. Rptr. 771, 782 (1981); *People* v. *Lopez*, 1 Cal. App. 3d 78, 81-83 (1969); *Morris* v. *State*, 532 S.W.2d 61, 63 (Tenn. Crim. App. 1975). These courts have reasoned that, although the equal protection clause guarantees that indigency may not compromise a person's defense or statutory appeal procedure, "[a] motion for a new trial is consistently placed in a different category than the original trial or an appeal from a conviction." *Banks, supra* at 954.

In cases involving petitions for habeas corpus relief, which are similar to motions for a new trial, courts have also concluded that indigent defendants do not have an absolute right to be furnished appointed counsel. See, e.g., *Norris* v. *Wainwright*, 588 F.2d 130, 132-134 (5th Cir.), cert. denied, 444 U.S. 846 (1979) (Federal and State petition); *Graham* v. *State*, 372 So. 2d 1363, 1365-1366 (Fla. 1979) (Federal and State petition); *Honore* v. *Washington State Bd. of Prison Terms*, 77 Wash. 2d 660, 673-674 (1970) (State petition). Some courts have adhered to a view that the decision whether to appoint counsel in proceedings on a habeas corpus petition is discretionary with the trial judge

and will not be overturned absent a showing of fundamental unfairness which impinges on the defendant's due process rights. See, e.g., *Norris, supra* at 133-134. Cf. *Vandenades* v. *United States*, 523 F.2d 1220, 1225-1226 (5th Cir. 1975) (on motion to vacate sentence, decision whether to appoint counsel is discretionary and will not be overturned in absence of fundamental unfairness). Other courts, however, have concluded that the Federal Constitution requires counsel to be furnished to an indigent defendant in prosecuting a habeas corpus petition when "a colorable or justiciable issue or meritorious grievance prima facially appears in the [defendant's] petition." *Graham, supra* at 1366. See also *Honore, supra*.

After reviewing both United States Supreme Court precedent and decisions of other courts, we conclude that an indigent defendant does not have an absolute right under any provision of the United States Constitution or the Massachusetts Declaration of Rights to appointed counsel in preparing or presenting his motion for a new trial. We emphasize that, by reason of the fact that a State has no obligation to provide a procedure enabling defendants to make motions for a new trial, it need not place poor and wealthy defendants on an absolutely equal level in terms of the services available to them in pursuing a motion for a new trial. *Ross* v. *Moffitt*, 417 U.S. 600, 609-616 (1974). Rather, the State need only ensure that indigent defendants have meaningful access to this postconviction proceeding. *Id.* at 616.

The appointment of counsel on a motion for a new trial is not necessary in all cases to ensure meaningful access. In many cases, the judge ruling on the motion for a new trial will be the same judge who presided over the original trial. See *United States* v. *Banks*, 369 F. Supp. 951, 955 n.7 (M.D. Pa. 1974). Therefore, the judge will have familiarity with both the legal and factual issues involved. Moreover, in many cases defendants present frivolous and repetitive motions. Accordingly, allowing a judge to rule on these motions without appointing counsel would not result in a denial of meaningful access to the court. Furthermore,

in some cases the issues presented by the defendant will not be of such complexity or difficulty that counsel is necessary.

We note that, when a defendant presents a motion for a new trial which raises a colorable or meritorious issue, "it is much the better practice to assign counsel." *Dillon* v. *United States*, 307 F.2d 445, 448 (9th Cir. 1962), quoting *United States ex rel. Wissenfeld* v. *Wilkins*, 281 F.2d 707, 715 (2d Cir. 1960). We do not go so far, however, as those courts which have concluded that, once a substantial issue is raised, the appointment of counsel is mandatory. See, e.g., *Graham* v. *State*, 372 So. 2d 1363, 1366 (Fla. 1979). In our view, the decision whether to appoint counsel remains discretionary with the judge and the determination whether a refusal to appoint counsel deprives an indigent defendant of meaningful access, *Ross* v. *Moffitt, supra* at 616, or results in fundamental unfairness, *Lassiter* v. *Department of Social Servs.*, 452 U.S. 18, 24-25 (1981), will be resolved on a case-by-case basis. See *Gagnon* v. *Scarpelli*, 411 U.S. 778, 788 (1973).

In this case no constitutional violation occurred when the judge declined to appoint counsel to represent the defendant. We point out that the judge who presided at trial was also the judge who reviewed the defendant's motion for a new trial. Furthermore, five of the eight recited reasons alleged to require a new trial related to the trial judge's charge to the jury and involved no factual issues. See *Commonwealth* v. *Lynes*, 13 Mass. App. Ct. 1028 (1982). The remaining three errors asserted in the defendant's motion pertained to defense counsel's alleged ineffectiveness in failing to request production of photographs that were shown to the Commonwealth's identification witness, in failing to move to suppress the photographic identification, and in allowing a policeman to testify to the effect that the defendant had been in trouble with the police prior to the incident at issue. Each of these claims involved factual and legal issues with which the judge was sufficiently familiar to consider the defendant's motion without appointing counsel. The strongest factor negating a constitutional violation in

this case, however, is that, as we shall discuss *infra*, the judge properly concluded that the defendant's motion for a new trial does not present any meritorious issues.

2. *Right to Counsel Under Mass. R. Crim. P. 30.*

The defendant also claims that he was entitled to appointed counsel under Mass. R. Crim. P. 30 (c) (5), 378 Mass. 900 (1979). He concedes that rule 30 (c) (5) specifically provides that the decision whether to appoint counsel to represent a defendant in the preparation and presentation of a new trial motion is within the discretion of the judge. The defendant urges, however, that, notwithstanding the clarity of the provisions of rule 30 (c) (5), we should remove the decision whether to appoint counsel from the discretion of the trial judge. He acknowledges that the Reporters' Notes to rule 30 indicate that subdivision (c) (5) adheres to a recommendation of the ABA Standards Relating to Post-Conviction Remedies § 4.4 (Approved Draft 1968). Reporters' Notes to Mass. R. Crim. P. 30, Mass. Ann. Laws, Rules of Criminal Procedure at 485 (1979). In setting this standard, the American Bar Association suggests that counsel be appointed for those indigent defendants whose motions for a new trial demonstrate a basis for relief, but that counsel need not be appointed for frivolous or repetitive claims. The defendant points out, however, that in the most recent edition of the standards, IV ABA Standards for Criminal Justice, Postconviction Remedies, 22-4.3 (2d ed. 1982), the American Bar Association has abandoned the view that appointment of counsel is discretionary and now recommends that counsel be appointed on all motions for a new trial. For the reasons previously stated in our analysis of the defendant's constitutional claim, we decline to follow this unbending rule that counsel must be appointed for indigent defendants on all motions for a new trial. "While such a rule has the appeal of simplicity, it would impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel." *Gagnon* v. *Scarpelli*, 411 U.S. 778, 787 (1973). Therefore, the decision whether to

appoint counsel on a motion for a new trial properly remains within the discretion of the trial judge.

3. *Denial of Effective Assistance of Counsel.*

The defendant's remaining arguments relate to the substantive grounds on which he bases his motion for a new trial. We need not address any of these issues except in so far as they relate to whether the defendant was denied effective assistance of counsel because none of these issues were raised at trial or in the defendant's appeal as of right, although they could have been, and, further, because some of these issues were not raised in the defendant's motion for a new trial. See *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 229 (1973), and cases cited.

(a) *Failure to file motion to suppress.* The defendant asserts that he was denied effective assistance of counsel because his trial counsel failed to file a pretrial motion to suppress certain photographic identifications made by the victim. We disagree. There is no indication that the pretrial identification was the result of impermissibly suggestive procedures or that there was any defect in the identification process.[4] Therefore, it is highly unlikely that a motion to suppress would have succeeded. It is not ineffective assistance of counsel when trial counsel declines to file a motion with a minimal chance of success. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 99 (1974); *Commonwealth* v. *LeBlanc*, 11 Mass. App. Ct. 960, 962-963 (1981); *Commonwealth* v. *Schlieff*, 5 Mass. App. Ct. 665, 669 (1977). Furthermore, as the defendant concedes, the decision not to file a motion to suppress may have been a tactical one. See

---

[4] After the victim offered a description of the woman in the parking lot, a police officer produced an array of five photographs. The victim identified a photograph of Maureen Pullman as the woman in the parking lot. The officer then produced an array of eight photographs of males, and the victim positively identified the defendant as the man who beat him. The officer testified that he simply handed the photographs to the victim and asked whether he recognized anyone. The officer further stated that he did not comment or offer any suggestions to the victim during this process. These facts reveal no specific defect or suggestive tactic in the identification process, nor does the defendant suggest any.

*Commonwealth* v. *Moffett,* 383 Mass. 201, 214 n.7 (1981). In *Commonwealth* v. *Adams,* 374 Mass. 722, 728-729 (1978), we indicated that some actions by counsel may be "so manifestly unreasonable" that they could not be protected under the guise of trial tactics. In this case, however, where trial counsel did not move to suppress the photographic identification but rather cross-examined the witnesses extensively, and strenuously argued the weakness of the identification testimony, trial counsel's actions may not be characterized as "manifestly unreasonable." *Commonwealth* v. *Levia,* 385 Mass. 345, 354 (1982).

(b) *Failure to request misidentification charge.* The remainder of the defendant's arguments relate to the adequacy of the judge's instructions to the jury. First, the defendant submits that he was denied effective assistance of counsel by his trial attorney's failure to request jury instructions on the issue of misidentification. The defendant relies principally on *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 302 (1979), where we indicated that a defendant who fairly raises issues at trial concerning misidentification might well be entitled to instructions on those issues. See also *United States* v. *Telfaire,* 469 F.2d 552, 555 n.11 (D.C. Cir. 1972) (per curiam). In *Rodriguez, supra,* we suggested the identification instructions of *Telfaire, supra* at 558-559, as appropriate for cases in which identification is in issue, with the further suggestion that they may be modified as the evidence and allegations at trial require. *Rodriguez, supra* at 310 n.1. See also *Commonwealth* v. *Moffett, supra* at 755. The defendant here argues that his entire defense at trial rested on challenging the credibility of the victim's identification. The defendant further asserts that no identification instructions were given. We point out, however, that the trial judge did charge on the possibility of misidentification. Although the judge did not include every portion of the *Rodriguez* instruction, trial counsel's failure to request such instructions did not deprive the defendant of his right to effective assistance of counsel.[5]

---

[5] The defendant also asserts that the identification may be challenged on the basis of the possibility of a mistaken identification induced by unre-

The judge's charge clearly alerted the jury to the issue of misidentification. Furthermore, the instructions, read in their entirety, fully informed the jurors of their duty to find the defendant guilty beyond a reasonable doubt and emphasized the Commonwealth's burden of proof. See *United States* v. *Kavanagh*, 572 F.2d 9, 12 (1st Cir. 1978). Moreover, "[d]efense counsel focused heavily on the possibility of misidentification through able cross-examination of the Commonwealth's witnesses, and he forcefully argued the discrepancies and infirmities in the identification testimony to the jury." *Commonwealth* v. *Durant*, 10 Mass. App. Ct. 768, 772 (1980). See also *Kavanagh, supra.* In light of all these circumstances, we conclude that the instructions were a sufficient explication of the issue of misidentification and that trial counsel's failure to request more extensive instructions did not deprive the defendant of his right to effective assistance of counsel.

(c) *Failure to object to charge on reasonable doubt.* The defendant next argues that the judge erred in equating reasonable doubt with moral certainty. The defendant asserts that the repeated equation of "reasonable doubt" with "moral certainty" deprived him of his constitutional right to be convicted of a crime only on proof beyond a reasonable doubt. He contends that the phrase "moral certainty" misinforms the jury because "[it] could be interpreted to mean that the certainty is based on feeling, i.e., moral conviction, rather than facts." *United States* v. *Indorato*, 628 F.2d 711, 721 n.8 (1st Cir.), cert. denied, 449 U.S. 1016 (1980). In *Indorato, supra,* the United States Court of Appeals for the First Circuit disapproved of the use of the "moral certainty" phraseology in jury instructions. *Id.* at 721. See also *United States* v. *Whitaker*, 372 F. Supp. 154, 160 (M.D. Pa.), aff'd mem., 503 F.2d 1400 (3d Cir. 1974), cert.

---

liable identification procedures. The assertion that the identification procedures were unreliable is supported nowhere in the record. See note 4, *supra.* In light of these circumstances, the judge's instructions on the issue of misidentification were sufficient. See *United States* v. *Kavanagh*, 572 F.2d 9, 12 n.4 (1st Cir. 1978).

denied, 419 U.S. 1113 (1975); *Davenport* v. *State,* 519 P.2d 452, 456 (Alaska 1974). The court indicated, however, that use of this term in jury instructions would not by itself result in legal or constitutional error. *United States* v. *Indorato, supra.* See also *United States* v. *Drake,* 673 F.2d 15, 21 (1st Cir. 1982); 2 C.A. Wright, Federal Practice and Procedure § 500, at 808-810 (1982).

Our use of the phrase "moral certainty" derives from suggested jury instructions in *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850). In *Commonwealth* v. *Tavares,* 385 Mass. 140, 147 (1982), we, like the Court of Appeals for the First Circuit, recently indicated that use of this term was not error. The defendant's argument therefore fails. In this case, the charge read as a whole adequately apprised the jury of the reasonable doubt standard and the defendant was not deprived of effective assistance of counsel by his trial attorney's failure to object to the judge's charge.

(d) *Failure to object to charge on appellate process.* The defendant asserts next that the trial judge's reference in his charge to the appellate process constituted error. We disagree. Although we have cautioned against the "unnecessary mention of the appellate process to the jury," *Commonwealth* v. *Johnson,* 379 Mass. 177, 182 (1979), we have held such remarks to constitute reversible error only when they had the "inescapable effect of reducing the jurors' appreciation of the significance of their deliberations and verdict." *Id.,* quoting *Commonwealth* v. *Walker,* 370 Mass. 548, 574, cert. denied, 429 U.S. 943 (1976). The judge in this case did not advise jurors "not to be overly concerned about rendering hasty or 'correct' verdicts [on the ground that] the defendant is adequately protected by the process of appeal to higher tribunals." *Walker, supra.* Nor did the judge suggest that an appellate court would correct fact-finding errors of the jury. See *Johnson, supra.* An examination of the instructions reveals that the judge mentioned the appeal process only in explaining to the jurors that they should apply the law as he instructed them and should not attempt to determine whether his view of the

law was correct. This reference, "[h]owever ill-advised," is not reversible error. *Id.* Further, trial counsel's failure to object to it did not deny the defendant effective assistance of counsel.

(e) *Failure to object to charge on presumption of innocence.* The defendant's final contention is that the judge erred in his instructions as to the presumption of innocence. Specifically, the defendant argues that the judge committed reversible error when he stated that the defendant was "cloaked" with a presumption of innocence. The defendant submits that the use of the word "cloaked" prejudiced him because it conveyed to the jury that the defendant was disguised or concealed by the presumption of innocence. When read in their entirety, however, the judge's instructions on the presumption of innocence conform substantially to the type of instructions that we have approved. See *Commonwealth* v. *DeFrancesco*, 248 Mass. 9, 13 (1924).

The defendant also urges that the judge erred in failing to state that the presumption of innocence governs until it is overcome by proof beyond a reasonable doubt. In *Commonwealth* v. *Boyd*, 367 Mass. 169, 188-189 (1975), however, we determined that a trial judge is not required to use this suggested language in his charge because this language grants the defendant an additional benefit. See also *Commonwealth* v. *Powers*, 294 Mass. 59, 63-64 (1936). Accordingly, we conclude that the judge's instructions on the presumption of innocence were proper and that the defendant was not denied effective assistance of counsel by trial counsel's failure to object.

Thus, we reject all the defendant's arguments. The actions of trial counsel in this case simply cannot be said to fall below that which is expected from an ordinary, fallible lawyer. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974); *Commonwealth* v. *Bernier*, 359 Mass. 13, 18-19 (1971).

*Order denying motion for new trial affirmed.*