COMMONWEALTH vs. OLIVER J. HOWELL.

Suffolk.   February 7, 1985. — April 25, 1985.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal*, Assistance of counsel, Argument by prosecutor. *Probable Cause. Identification.*

The defendant in a criminal case was not deprived of effective assistance of counsel as a result of defense counsel's failure to seek suppression of the victim's identification of the defendant in a hospital room shortly after the defendant's arrest and the victim's subsequent in-court identification where it was highly unlikely that a motion to suppress would have succeeded. [656-657]

Descriptions furnished to police by the victim of an assault and battery who was attacked outside the door to her home and by children playing in the street at the time of the attack provided probable cause for the defendant's arrest less than an hour after the crime. [657-659]

There was nothing unconstitutionally suggestive about an identification of a defendant charged with assault and battery by the victim in a hospital room about an hour or two after the attack. [659-661]

Taken in context, a statement by the prosecutor in a criminal case during closing argument that "that's the man who did this, I'm sure of it," was not an expression of the prosecutor's opinion of the guilt of the defendant and did not create a substantial risk of a miscarriage of justice. [661-662]

INDICTMENTS found and returned in the Superior Court Department on September 23, 1978.

The cases were tried before *Francis J. Quirico*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Geline W. Williams* for the defendant.

*Michael J. Traft*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was convicted by a jury of armed assault with intent to rob and of assault and battery by means of a dangerous weapon. He was sentenced to the Massachusetts Correctional Institution, Cedar Junction, for concurrent terms

of from nine to twelve years and from nine to ten years. The defendant appealed to the Appeals Court, and we transferred the case to this court on our own motion. We affirm the defendant's convictions.

The defendant argues on appeal that the judgments should be reversed on two grounds. First, he contends that he was denied effective assistance of counsel, in violation of his rights under the Sixth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Constitution of the Commonwealth, because his trial counsel failed to file a motion to suppress evidence of the victim's identification of the defendant at a hospital shortly after the incident and at trial. Second, the defendant contends that the prosecutor committed reversible error during closing argument when he made a statement suggesting his own personal belief in the defendant's guilt. We hold that the defendant has not shown that he was denied effective assistance of counsel, and that the prosecutor's statement was not so improper as to warrant reversal.

We summarize the sequence of events leading to the defendant's convictions. On July 11, 1982, Vicki Meredith arrived at the door to her residence at 27 Hewins Street in the Dorchester section of Boston, between 7 P.M. and 7:30 P.M., while it was still daylight. As Meredith arrived at her home, she observed a number of neighborhood children playing in the street. When she placed her key in the door, she felt a powerful blow to the back of her head. The force of the blow caused Meredith's knees to buckle, and she fell against the door, causing it to open. As she fell to the floor, she turned toward her assailant and faced him from a distance of no more than ten inches to one foot. The man was reaching for her pocketbook, and he had a cane in his hand. Meredith was able to observe her attacker for ten to fifteen seconds before he ran off the porch.

Meredith's neighbors called an ambulance and the police, who arrived approximately twenty minutes later. Meredith then described her assailant to Officer Alan Whiffen of the Boston police. She testified at trial that she described him as being approximately five feet eleven inches tall, dark complexioned,

and wearing a fisherman's hat and a dark colored shirt.[1] On cross-examination, Meredith conceded that she could not remember if she gave the police a description of the assailant's age or weight, although she stated on direct examination that she had given the police a general description of the assailant's height, weight, and build.

Meredith was taken to Faulkner Hospital in Jamaica Plain for treatment. As she waited for treatment, no more than thirty to forty minutes after the incident, the police brought in the defendant and asked her to identify him. Meredith positively identified the defendant as her assailant. She later testified at trial that "there wasn't any question at all. I knew it was him." Meredith again identified the defendant as her assailant one month later on August 16, 1982, and during the trial, approximately eight months after the incident.

1. *Ineffective assistance of counsel.* The defendant argues that his counsel's failure to file a motion to suppress eyewitness identification deprived him of effective assistance of counsel, in violation of the Sixth Amendment and art. 12. He contends that Meredith's identification of him during the "showup" at the hospital and later during the trial should have been suppressed. The defendant contends that he would have had two substantial bases for suppression of the hospital identification because his arrest was without probable cause, and because the "showup" occurred under circumstances indicating "special elements of unfairness." He argues that a motion to suppress the in-court identification would have prevailed because this identification had no independent basis from the illegally tainted hospital "showup" identification.

"The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to

---

[1] Officer Whiffen testified that he believed that Meredith said her assailant was wearing a dark blue, flowered shirt. The defendant was wearing a beige print shirt with blue flowers when he was arrested.

ensure that the trial is fair. . . . The benchmark for judging any claim of ineffectiveness [under the Sixth Amendment] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* v. *Washington*, 466 U.S. 668, 685-686 (1984). *United States* v. *Cronic*, 466 U.S. 648, 657-660 (1984).

The United States Supreme Court ruled in *Strickland, supra* at 687, that the determination whether counsel's assistance was so defective as to require reversal of a conviction has two components: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." A similar if not identical standard applies under Massachusetts law. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974) ("[W]hat is required in the actual process of decision of claims of ineffective assistance of counsel . . . is a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inatten-tion of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available substantial ground of defence"). See also *Commonwealth* v. *Street*, 388 Mass. 281, 285 (1983). "[I]f the *Saferian* test is met, the Federal test is necessarily met as well. We accordingly examine the merits of the defendant's challenge on the basis of the *Saferian* standard. We leave open the question of what differ-ences, if any, exist between the two standards." *Commonwealth* v. *Fuller, ante* 251, 256 n.3 (1985).

a. *Probable cause.* The defendant argues that he was denied effective assistance of counsel because his trial counsel failed to make a motion to suppress the hospital identification on the

ground that his arrest was without probable cause. He contends that the later identification was unconstitutionally tainted by the illegal arrest, so that trial counsel's failure to make that motion deprived him of a substantial ground of defense.

"Probable cause to arrest has been defined as facts and circumstances within the knowledge of the police and of which they had trustworthy information which were 'sufficient to warrant a prudent man in believing that the . . . [defendant] had committed . . . an offense.'" *Commonwealth* v. *Grzembski*, 393 Mass. 516, 521 (1984), quoting *Beck* v. *Ohio*, 379 U.S. 89, 91 (1964). In the instant case, the police arrested the defendant based upon Meredith's description and information supplied by neighborhood children and by a man at 41 Michigan Avenue, who was not further identified during the trial.[2] We conclude that, based upon the descriptions provided by Meredith and the children, the police had sufficiently trustworthy information to warrant a reasonable belief that the defendant had committed a crime. "It is not ineffective assistance of counsel when trial counsel declines to file a motion with a minimal chance of success." *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983). The defendant was not, therefore, deprived of a substantial ground of defense by his counsel's failure to make a motion to suppress because of lack of probable cause to arrest. See *Strickland* v. *Washington*, 466 U.S. 668, 691-692 (1984); *Commonwealth* v. *Saferian*, 366 Mass. 89, 98 (1974).

Meredith testified at trial that she viewed her assailant for ten to fifteen seconds from a distance of ten inches to one foot. When the police arrived approximately twenty minutes later, she described her assailant to Officer Whiffen as being dark complexioned and wearing a hat and a dark colored shirt. She conceded, however, that she was uncertain whether she had described his height and weight. Furthermore, neighborhood children supplied certain information concerning the identity

---

[2] The Commonwealth alleges in its brief that this man was the defendant's father. The prosecution did not, however, introduce evidence at trial to establish the man's identity.

of the assailant.[3] One of the children led the officer to the defendant's residence at 41 Michigan Avenue. There, the officer spoke to an elderly black gentleman occupying the third floor apartment. The officer left the apartment, but later returned and observed the same man standing on the third floor porch at 41 Michigan Avenue. The man was pointing to 28 Michigan Avenue, where the officer found the defendant standing in the vestibule and placed him under arrest. The officer then took the defendant to the hospital where Meredith positively identified him as her assailant. The hospital identification occurred shortly after the officer arrested the defendant based upon sufficiently reliable information warranting a reasonable belief that the defendant had committed a crime. Cf. *Commonwealth* v. *Hason*, 387 Mass. 169, 174-175 (1982).

Since we conclude that the police had probable cause to arrest the defendant, counsel's failure to move to suppress the identification as illegally tainted by the arrest could not have deprived him of a substantial ground of defense. Cf. *United States* v. *Crews*, 445 U.S. 463 (1980) (despite defendant's illegal arrest, victim's in-court identification was admissible because it was untainted by the arrest).

b. *Eyewitness identification.* We now consider the defendant's contention that the hospital identification was unconstitutionally suggestive so that defense counsel should have moved to suppress it. We have previously held that a defendant was not denied effective assistance of counsel because his trial counsel failed to file a pretrial motion to suppress certain photographic identifications made by the victim. *Commonwealth* v. *Conceicao*, *supra* at 264-265. There, we concluded that "[t]here [was] no indication that the pretrial identification was the result of impermissibly suggestive procedures or that there was any defect in the identification process. Therefore, it is

---

[3] Officer Whiffen testified at trial that neighborhood children supplied certain information and that one of them led him to the defendant's residence. The Commonwealth contends in its brief that the neighborhood children identified the defendant as the assailant and gave his name and address. The officer testified that Michigan Avenue was "[w]ithin a couple of blocks" of Hewins Street.

highly unlikely that a motion to suppress would have succeeded." *Id.* at 264. Cf. *Commonwealth* v. *Moffett*, 383 Mass. 201, 213-214 (1981). We stated, furthermore, in *Conceicao*, that counsel's actions were not "'so manifestly unreasonable' that they could not be protected under the guise of trial tactics." *Commonwealth* v. *Conceicao, supra* at 265. Trial counsel had cross-examined the witness extensively concerning the eyewitness identification, and strenuously argued about the weakness of eyewitness identification.

In the instant case, the victim identified the defendant in a "showup" at the hospital within one or two hours after the incident occurred. We have frequently held that one-on-one confrontations, while often disfavored, are not subject to a per se rule of exclusion. *Commonwealth* v. *Storey*, 378 Mass. 312, 317 (1979), cert. denied, 446 U.S. 955 (1980). "[T]he test to be applied in measuring the constitutional sufficiency of single person confrontations under the due process clause is simply whether the confrontation is unnecessarily suggestive of the defendant." *Id.* Furthermore, under Federal due process standards, even if the identification procedure is suggestive, the identification evidence may be admissible if the out-of-court identification possesses certain indicia of reliability. *Manson* v. *Brathwaite*, 432 U.S. 98, 114 (1977) ("reliability is the linchpin in determining the admissibility of identification testimony"). See *Neil* v. *Biggers*, 409 U.S. 188, 198-199 (1972); *Stovall* v. *Denno*, 388 U.S. 293, 301-302 (1967) (the reliability of the identification procedure depends upon "the totality of the circumstances").

This court has left open the question whether we will follow the Federal "reliability test," *Commonwealth* v. *Venios*, 378 Mass. 24, 28 (1979), and it is unnecessary to decide that issue here. "[S]howups of suspects to eyewitnesses of crimes have been regularly held permissible when conducted by the police promptly after the criminal event." *Commonwealth* v. *Bowden*, 379 Mass. 472, 479 (1980), quoting *Commonwealth* v. *Barnett*, 371 Mass. 87, 92 (1976), cert. denied, 429 U.S. 1049 (1977). The defendant has not called our attention to any special elements of unfairness which would take this case out of the class

of cases permitting an identification without a lineup. *Commonwealth* v. *Bowden, supra.*

Had a motion to suppress been filed, the burden would have been on the defendant to prove by a preponderance of the evidence that the identification was unnecessarily suggestive. *Commonwealth* v. *Venios*, 378 Mass. 24, 29 (1979). He offers nothing here to suggest that he could have met the burden.

Furthermore, because of our ruling that the hospital identification was not unconstitutional on either ground raised by the defendant, we need not address the question whether the in-court identification was illegally tainted and should have been excluded. Compare *Commonwealth* v. *Botelho*, 369 Mass. 860, 864-865 (1976).

2. *Prosecutor's comment.* During the Commonwealth's closing argument, the prosecutor made a statement which the defendant contends constitutes an impermissible expression of a personal opinion as to the defendant's guilt.[4] The defendant argues that the statement deprived him of a fair trial, and requests that we order a new trial. Defense counsel made no objection to the statement at trial, however, so the standard of review is whether the prosecutor's comment created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Daigle*, 379 Mass. 541, 549 (1980), and cases cited. We conclude that, even though the trial judge gave no curative instruction immediately after the comment, the defendant has failed to make an adequate showing that the comment created a substantial risk of a miscarriage of justice.

It is undisputed that during his argument the prosecutor is prohibited from expressing any personal belief as to the defendant's guilt. See *Commonwealth* v. *Silva*, 388 Mass. 495, 508-509 (1983); *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 537 (1971); S.J.C. Rule 3:07, DR 7-106 (C) (4), as appearing in

---

[4] The prosecutor stated during his closing argument: "Now, the Commonwealth would contend that if you look at all the evidence and you draw your reasonable and rational inferences from the evidence, there isn't any reasonable doubt, there's no doubt at all, that that's the man who did this, *I'm sure of it*, coupled with the observations of the police officer, his own consciousness of guilt" (emphasis added).

382 Mass. 787 (1981); S.J.C. Rule 3:08, PF 13 (b), as appearing in 382 Mass. 802 (1981). The Commonwealth argues, however, that the prosecutor was not expressing his personal opinion, but rather was repeating evidence already discussed during the argument. It contends that the prosecutor was quoting Meredith's testimony when she identified the defendant as her assailant, and that this interpretation of the prosecutor's statement is clear when the statement is considered in the context of his preceding discussion of the evidence during closing argument.

"In analyzing whether an improper remark is prejudicial or presents a risk of a miscarriage of justice, the remark must be considered in the context of the prosecutor's entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial." *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978). We conclude that the statement, considered in the context of the prosecutor's entire argument, was not an expression of the prosecutor's opinion of the guilt of the defendant and did not create a substantial risk of misleading the jury as to the defendant's guilt. Furthermore, any risk of a miscarriage of justice was minimized by the judge's instructions to the jury that the arguments of counsel are not evidence and that, in deciding what the facts are, the jurors must rely upon their own memories as to the evidence presented. Cf. *Commonwealth* v. *DeChristoforo, supra* at 537-538; *Commonwealth* v. *Gaeten,* 15 Mass. App. Ct. 524, 525-529 (1983).

*Judgments affirmed.*