COMMONWEALTH VS. GERALDO A. ORTIZ-PEGUERO.

No. 99-P-255.

Bristol. October 12, 2000. - March 1, 2001.

Present: GREENBERG, KAPLAN, & DUFFLY, JJ.

*Forfeiture Proceeding. Practice, Criminal,* Plea, Assistance of counsel,
Discovery, Indictment. *Constitutional Law,* Assistance of counsel, Search
and seizure. *Evidence,* Hearsay. *Search and Seizure,* Probable cause. *Probable Cause.*

In a plea proceeding involving violations of the controlled substances laws,
the record supported the inference that forfeiture of the defendant's
property was part of his plea agreement and that the defendant waived his
right to contest the forfeiture proceedings. [93-95]
The record of a criminal proceeding that culminated in guilty pleas did not
support the defendant's later claim that his counsel had been ineffective for
failure to conduct discovery [95]; for failing to raise a futile challenge to
the sufficiency of the evidence before the grand jury [95-96]; for waiving
futile challenges to the lawfulness of certain search warrants [96-97]; or
for failing to file a motion to suppress evidence that had only a minimal, if
any, chance of success [97-98].

INDICTMENTS found and returned in the Superior Court Depart-
ment on February 23, 1995, and February 7, 1996.

Motions to withdraw guilty pleas, for a new trial, and for the
return of forfeited property were heard by *Richard F. Connon,*
J.

The case was submitted on briefs.

*Geraldo A. Ortiz-Peguero,* pro se.

*Daniel J. McColgan,* Assistant District Attorney, for the
Commonwealth.

DUFFLY, J. An undercover investigation into the illegal sales
of narcotics in the city of New Bedford led to the return of

separate indictments of the defendant[1] on February 23, 1995,[2] and on February 7, 1996,[3] charging him with multiple violations of drug trafficking laws. At the September 4, 1996, disposition hearing which dealt with the charges set forth in both sets of indictments, the defendant offered a change of plea upon a joint recommendation with the Commonwealth. The Commonwealth entered a nolle prosequi as to certain charges, and the defendant pleaded guilty to the remaining charges.[4] Also at this hearing, the judge allowed the Commonwealth's motion for the forfeiture of the defendant's three automobiles and cash. On November 6, 1998, the defendant filed motions seeking to withdraw his guilty pleas and for a new trial, and requesting the return of his forfeited property. The motions were denied. On appeal, the defendant argues that he received inadequate notice of the motion requesting forfeiture and that he is entitled to withdraw his guilty plea and to a new trial because his counsel was ineffective when he failed to (1) request discovery prior to trial; (2) challenge the sufficiency of the evidence presented to the grand

[1]As he testified at the disposition hearing, the defendant used several names in addition to Geraldo Ortiz-Peguero, including Jose Miguel Rosario Just, Rafael Arcadio Ramirez, and Rafael Arcadio Ramirez Cruz, the name on his birth certificate. Moreno (also "Mirano" and "Morano") is the name by which the defendant was known during the undercover investigations which led to his arrest and the convictions now on appeal.

[2]The February 23, 1995, indictments charged the defendant with trafficking in cocaine of 100 grams or more, in violation of G. L. c. 94C, § 32E(*b*)(3) (indictment no. 35824); trafficking in cocaine of 28 grams or more, in violation of G. L. c. 94C, § 32E(*b*)(2) (indictments no. 35825 and no. 35826); and trafficking in cocaine within 1,000 feet of a school zone, in violation of G. L. c. 94C, § 32J (indictment no. 35827).

[3]The February 7, 1996, indictments charged the defendant — there identified by an alias, Jose Miguel Rosario Just — with trafficking in cocaine of 200 grams or more, in violation of G. L. c. 94C, § 32E(*b*)(4) (indictment no. 9673CR0054A); trafficking in cocaine of 28 grams or more, in violation of G. L. c. 94C, § 32E(*b*)(2) (indictment no. 9673CR0054C); and trafficking in cocaine within 1,000 feet of a school zone, in violation of G. L. c. 94C, § 32J (indictments no. 9673CR0054B and no. 9673CR0054D).

[4]The defendant pleaded guilty to one count of trafficking in cocaine of 100 grams or more and three counts of trafficking in cocaine of 28 grams or more. He also pleaded guilty to a reduced charge: to so much of the charge on the indictment for trafficking in cocaine of 200 grams or more as charged him with trafficking in 100 grams or more but less than 200 grams. The defendant was sentenced to concurrent State prison terms on his guilty pleas.

jury; (3) challenge the sufficiency of affidavits supporting applications for search warrants; and (4) seek suppression of evidence obtained from a search he claims was conducted prior to the issuance of a warrant. We affirm the judgments and the denial of the motion requesting return of the forfeited property.

A. *Background.* Working undercover, State Trooper Carmelo Serrano made controlled purchases of cocaine from the defendant, who introduced himself as "Mirano," on January 27, 1995, and on January 29, 1995. Because the undercover investigation was ongoing, no arrests were made at the time of these purchases.

Based primarily on information from two confidential informants that the defendant was selling cocaine out of his 1986 blue Oldsmobile Cutlass, New Bedford police obtained a search warrant for that vehicle that was executed on January 31, 1995. Pursuant to that search, 80.6 grams of cocaine was seized from the vehicle. The foregoing evidence, along with evidence of the controlled buys made earlier that month, was presented to the grand jury that indicted the defendant on February 23, 1995, on charges of trafficking in cocaine. See note 1, *supra.* After pleading not guilty, the defendant was released on bail.

Following his release, the defendant continued to be a subject of investigation by the New Bedford police, who obtained search warrants for a retail store owned by the defendant, a 1987 white Pontiac and 1986 red Oldsmobile, two apartments not here at issue,[5] and for all persons present in the store or automobiles. In the search conducted on December 6, 1995, pursuant to these warrants, over 72 grams of cocaine were found in a fanny pack being worn by the defendant, while he was in the store during the search. In addition, cash was found

---

[5]The apartments were linked to a "Rafael Ramirez," and the defendant notes, correctly, that there is nothing in the affidavit itself linking "Rafael Ramirez," to the person then known to police as "Moreno" or "Morano." Even were we to conclude, however, that insufficient probable cause was established to support a search of the apartments located at 268 Tinkham Street and 43 Thompson Street, this would not invalidate the search in connection with places for which a warrant was validly obtained. See *Commonwealth* v. *Lett,* 393 Mass. 141, 144-145 (1984). The evidence here at issue was obtained pursuant to valid searches and was not seized from either of the above apartments.

in his wallet and pocket, and in a black jean jacket. Additional cash, as well as utility bills and rent receipts for the business address and an apartment located at 164 Tinkham Street, were located in the cash register.

Following this search, police applied for a warrant to search the apartment located at 164 Tinkham Street. Police secured the apartment while that application was pending. In a search conducted after obtaining the warrant, police found 451.2 grams of cocaine secreted under a floorboard inside a kitchen closet, as well as other contraband. On February 7, 1996, the defendant was indicted on the drug trafficking charges described in note 2, *supra*.

As previously noted, the defendant pleaded guilty to certain of the charges at the September 4, 1996, disposition hearing. Immediately after the judge accepted the defendant's guilty pleas, the Commonwealth moved, pursuant to G. L. c. 94C, § 47(*b*), for the forfeiture of the following property: the 1986 blue Oldsmobile Cutlass; the 1987 white Pontiac; the 1986 red Oldsmobile; and $5,384 in cash. This motion and a subsequent motion to increase to seven thousand one hundred and nineteen dollars the amount of cash forfeited, were granted.

B. *Forfeiture hearing.* The defendant asserts that the judge erred in denying, without a hearing, his motion for the return of his forfeited property, or alternatively for "a rehearing on the petition to forfeit his property." He contends that he was entitled to at least two weeks' notice of the Commonwealth's intent to seek the forfeiture, that he never received such notice or had the opportunity for a hearing, and that forfeiture of his property was not part of his plea agreement. He makes no separate claim with respect to the amended order of forfeiture which increased the amount of cash to be forfeited.

The Commonwealth may seek the forfeiture of property used or intended for use in the manufacture, compounding, processing, delivery, or distribution of a controlled substance, or "moneys . . . or other things of value," exchanged for or traceable to an exchange for a controlled substance, in violation of G. L. c. 94C, § 47(*a*).

General Laws c. 94C, § 47, "contemplates two methods by which forfeiture proceedings may be initiated by the Com-

monwealth: either by petition in the nature of a proceeding in rem filed in the Superior Court, G. L. c. 94C, § 47(*d*), or, as happened here, by motion filed in a related criminal proceeding, G. L. c. 94C, § 47(*b*)."[6] *Commonwealth* v. *Brown*, 426 Mass. 475, 480 (1998). "Although § 47(*d*) expressly requires the Commonwealth to provide the owner of the property (and other interested persons) with notice prior to a hearing on a forfeiture petition, § 47(*b*) does not prescribe any notice period relative to motions. A forfeiture proceeding initiated by motion filed in a related criminal proceeding is outside the scope of the criminal matter and constitutes a civil proceeding." *Ibid.* See *Commonwealth* v. *Goldman*, 398 Mass. 201, 203 (1986). Ordinarily, we would "look to the notice requirements applicable to motions filed in other civil proceedings as prescribed in Mass.R. Civ.P. 6(*c*), 365 Mass. 747 (1974)," to determine whether the notice requirement had been fulfilled. *Commonwealth* v. *Brown*, *supra* at 480.[7] Here, however, the defendant's attorney never objected to a lack of notice, and the record supports the inference that the forfeiture of the defendant's property was part of his plea agreement on the drug charges.[8] In these circumstances, the defendant waived his right to contest the forfeiture

[6]Property which shall, pursuant to G. L. c. 94C, § 47(*b*), be declared forfeited upon motion by the Commonwealth does not specifically include vehicles. The provisions regarding the forfeiture of vehicles (and other conveyances) are set forth in G. L. c. 94C, § 47(*c*). The language of § 47(*c*) does not preclude the Commonwealth from seeking the forfeiture of vehicles by a motion filed in a related criminal proceeding, as is done with respect to the forfeiture of property pursuant to § 47(*b*). It would appear that the Commonwealth may initiate forfeiture proceedings either through the filing of a petition in the Superior Court or a motion filed in a related criminal proceeding whether the property is a "conveyance," or other property used in violation of G. L. c. 94C, § 47(*a*).

[7]Pursuant to Mass.R.Civ.P. 6(c), "[a] written motion . . . shall be served not later than 7 days before the time specified for the hearing." The Commonwealth has conceded that no such written notice was given to the defendant.

[8]At the disposition, the defendant acknowledged the truth of the recited facts supporting each charge to which he pleaded guilty. Included in the recitation of facts were references to the search on January 31, 1995, of "a car owned by the defendant," to additional search warrants for "motor vehicles associated with this defendant . . . for apartments and one store run by this defendant. . . . [I]n the process, [police] uncovered [cocaine] at the apart-

proceedings. See *Spence* v. *Reeder*, 382 Mass. 398, 411-412 (1981) (a defendant can waive statutory and constitutional rights). The judge properly denied the defendant's motion for the return of his forfeited property.

C. *Motions to withdraw guilty pleas and for a new trial.* The defendant appeared with his attorney at the disposition and acknowledged the truth of the extensive recitation of facts supporting each charge to which the defendant pleaded guilty. He makes no direct claim that his guilty plea was not voluntarily made or that it was otherwise defective, but makes several claims of ineffective assistance of counsel, which we briefly address.

1. With respect to the claim that the defense counsel failed to seek discovery prior to trial, we note that defense counsel set forth discovery requests in conference reports filed on February 16, 1996, and May 15, 1996. The defendant has failed to show that there was additional information to be gleaned through further discovery or how additional discovery could have been used effectively. Compare *Commonwealth* v. *Hamm*, 19 Mass. App. Ct. 72, 76-78 (1984).

2. The defendant claims his attorney was ineffective for not

ment located at 146 Tinkham Street."

PROSECUTOR: "The vehicles were also seized and the moneys were seized as well. That would be the facts, your Honor, of those two cases."

COURT: "Mr. Ramirez, did you — do you acknowledge that those were your vehicles and your apartments?"

DEFENDANT: "Yes."

Proceeding with the colloquy and sentencing, the prosecutor made a sentencing recommendation, then stated: "In addition, I'm going to submit, your Honor, a series of orders of forfeiture for the three motor vehicles involved and for the money seized . . . and I have just filled out the relevant forfeiture order for your signature and review."

Immediately thereafter defense counsel stated: "If it please the Court, Attorney Frank Kelleher for the defendant. I would — I entered into this plea negotiation with Assistant District Attorney John Letourneau, and it was really over a series of months, and I would urge the Court to adopt the recommendation as a joint recommendation."

The clerk, after reading the sentences, concluded: "The following orders of forfeiture having been issued. As to property consisting of a 1986 Oldsmobile Cutlass, color blue, Massachusetts registration 361ZPG; as to $5,384; as to a 1986 Oldsmobile model '98, color red, Massachusetts registration 397XBV; and a 1987 Pontiac four door, color white slash red, Massachusetts registration 806ZEH." No objection was made.

challenging his indictments on the ground that Trooper Carmelo Serrano's testimony to the grand jury that he contacted the Massachusetts State Police Crime Lab and received information about the weight and purity of the substances he purchased from the defendant, was hearsay. Absent the hearsay, he argues, there was insufficient probable cause to indict the defendant on drug charges. It is well-established that an indictment may be based solely or in part on hearsay.[9] *Commonwealth* v. *Gibson*, 368 Mass. 518, 522-525 (1975); *Commonwealth* v. *McCarthy*, 385 Mass. 160, 162 (1982); *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450-451 (1984). See Mass.R.Crim.P. 4(c), 378 Mass. 849 (1979). His attorney was thus not ineffective for failing to mount a challenge that had no prospect of success.

3. We apply the *Aguilar-Spinelli*[10] standard to determine whether the affidavits supporting applications for search warrants for the three automobiles, the business and defendant's person, each based on information from confidential informants, were supported by probable cause, *Commonwealth* v. *Upton*, 394 Mass. 363, 367, 374-376 (1985), and conclude that they were. In each affidavit, the information supplying the probable cause was provided by at least one confidential informant who (1) had purchased cocaine from the defendant, knew where the contraband was kept, and had made detailed observations demonstrating "special familiarity with the [defendant's] affairs," satisfying the basis of knowledge test, *Commonwealth* v. *Bakoian*, 412 Mass. 295, 301-302 (1992) (citation omitted), and (2) had previously provided information to police leading to the arrest, and related seizure of drugs, of named individuals, satisfying the veracity test. *Commonwealth* v. *Perez-Baez*, 410 Mass. 43, 46 (1991).

The waiver by defense counsel of the defendant's motion to suppress the drugs seized from the defendant's car, business, and person was not behavior falling measurably below that which might be expected from an ordinary fallible lawyer, *Com-*

---

[9]We note, however, that "sound policy dictates a preference for the use of direct testimony before grand juries." *Commonwealth* v. *O'Dell*, 392 Mass. 445, 451 n.1 (1984), quoting from *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 656 (1979).

[10]*Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964); *Spinelli* v. *United States*, 393 U.S. 410, 415 (1969).

*monwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), as pursuit of the motion to suppress in the circumstances here would have been futile. See *Commonwealth* v. *Conceicao,* 388 Mass. 255, 264 (1983).

4. The defendant next argues that his attorney was ineffective for failing to file a motion to suppress evidence (cocaine) seized from his residence at 164 Tinkham Street. He first claims that the affidavit supporting the warrant to search 164 Tinkham Street does not connect him to that apartment. The affidavit is based on information from a reliable informant, see discussion *supra,* that the defendant "has a house near the store where he keeps the bulk of his cocaine" and that if the defendant did not have cocaine he would leave the store, cross Acushnet Avenue, proceed east on Tinkham Street, and in a short time return with cocaine. Also in this affidavit, Detective Gonzalez states that earlier in the day on December 6, 1995, the defendant had been placed under arrest in connection with the execution of the prior search warrant, "advised of his rights under [M]iranda, and question[ed] about 164 Tinkham Street," to which the defendant responded that "he rented the apartment at 164 Tinkham St[reet], and produced the keys to the apartment which he had in his pants pocket." This was information "sufficient [to establish a] nexus" between the defendant and the apartment, and "to permit the issuing magistrate to determine whether . . . drugs could reasonably be expected to be located in the defendant's apartment." *Commonwealth* v. *Blake,* 413 Mass. 823, 829 (1992).

The defendant's second claim is that the search was illegal because it was conducted prior to the issuance of a warrant and in the absence of exigent circumstances. Not knowing whether others were in the apartment, the police were entitled to enter and secure the apartment in order to prevent the possible destruction of evidence while they awaited the issuance of a search warrant. *Ibid.* Contrast *Commonwealth* v. *Nova,* 50 Mass. App. Ct. 633, 635-636 (2001) (no obvious concerns for loss or destruction of evidence as defendant's arrest was pursuant to a bench warrant issued after he fled court). On the record, it was not until obtaining the warrant that police searched the apartment and seized drugs found secreted under a floorboard inside

a kitchen closet. Defense counsel's decision not to file a motion that had only a minimal chance of success did not, therefore, constitute ineffective assistance of counsel. *Commonwealth* v. *Conceicao,* 388 Mass. at 264.

*Conclusion.* Based on the foregoing, we affirm the judgments and the order denying the defendant's motion seeking the return of forfeited property.

*So ordered.*